In re John DARNELL, Debtor.

UNITED STATES of America,
Plaintiff-Appellant,

v.

John DARNELL and the Commonwealth
of Kentucky, Defendants-Appellees.

No. 86–5862.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 20, 1987.

Decided Nov. 24, 1987.

Joseph M. Whittle, U.S. Atty., Barbra Murley Harris, Louisville, Ky., Tom Lamons (argued), Michael L. Paup, Lead Counsel, Tax Div., Roger M. Olsen, Wynette Hewett, Gayle Miller, Washington, D.C., for plaintiff-appellant.

Ronald J. Bamberger, Russ Wilkey, Owensboro, Ky., Donald S. Guier, Edward A. Siemon, Lead Counsel (argued), Arnold C. Jones, Frankfort, Ky., for defendants-appellees.

Before GUY and BOGGS, Circuit Judges, and SUHRHEINRICH, District Judge.*

* Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michi-
gan, sitting by designation.

**1264**

RALPH B. GUY, Jr., Circuit Judge.

This appeal presents a question of first impression regarding the statutory construction of § 724 of the Bankruptcy Code, 11 U.S.C. § 724, which controls the distribution of a debtor's property encumbered by tax liens. The United States District Court for the Western District of Kentucky, affirming the bankruptcy court, ordered the balance of debtor's property split pro rata between the competing tax liens of the Internal Revenue Service (IRS) and the Kentucky Department of Revenue, despite the fact that the IRS lien was perfected prior to the state lien. Because we disagree with the interpretation given to § 724 by the courts below, we reverse.

**I.**

On December 15, 1983, John Darnell, the debtor, filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, *et seq.*, seeking liquidation of his assets. Both the IRS and the Commonwealth of Kentucky filed proofs of claim for unpaid taxes that had arisen prior to the filing of the petition. The total amount of the claims of the United States was $145,-997.14; the Commonwealth's claims totaled $129,812.71. It was undisputed that the federal tax liabilities had been assessed and notices of tax liens had been filed prior to the Commonwealth's tax claims.

The debtor's property was liquidated and, after satisfaction of certain expenses of administration, the amount of $21,773.02 remained available for distribution. By order of July 31, 1984, the bankruptcy court granted the trustee's request to distribute this amount pro rata between the United States and the Commonwealth.[1] On October 22, 1984, the United States filed a motion for reconsideration of that order, contending that, because its tax claims were "first in time" and thus senior to those of the Commonwealth, it was entitled to a distribution of all the available funds and was not required to share pro rata with the Commonwealth. In response, the Commonwealth did not contest the seniority of the federal tax liens but contended that, by virtue of the provisions of § 724 of the Bankruptcy Code, the "first in time" rule was to be applied only to resolve disputes concerning the relative priority between a tax and nontax lien but did not apply to situations involving two (or more) competing tax liens.

Following a hearing and submission of supplemental briefs, the bankruptcy court issued its opinion, in which it essentially agreed with the Commonwealth's position and held that the United States's claim of priority for its secured lien was foreclosed by the "clear language" of the Bankruptcy Code. 58 B.R. 122 (Bankr.W.D.Ky.1986). In so holding, the court looked first to § 724(b) of the Code, which serves to subordinate secured tax claims to certain specified "priority" claims.[2] Based on this pro-

---

1. The record reveals that, at the time the trustee sought authority to make a pro rata distribution, he was unaware of the fact that notices of the federal tax liens had been filed.

2. § 724. Treatment of certain liens
 (a) The trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title.
 (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
 (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
 (2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of

this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
 (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
 (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
 (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
 (6) sixth, to the estate.
 (c) if more than one holder of a claim is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such holders under such paragraph shall

vision, the court ruled that, because tax liens are subordinated to these priority claims, they also lose their secured status and are to be treated as simply another category of priority claim. *Id.* at 122–23. As a result, the court found that the status of the IRS and Kentucky liens was "identical" under § 724(b)(3) and turned to § 724(c) to resolve the question of appropriate distribution. Section 724(c) provides that whenever two or more competing liens of the same class are involved, distribution should take place "in the same order as distribution to such holders would have been other than under this section." Following this directive, the court found § 726 of the Bankruptcy Code, which governs the manner of distribution of property of the estate with respect to priority claims and other unsecured claims, to be the appropriate law to apply.[3] *Id.* at 123. Section 726 provides for pro rata distribution among two or more claims of the same priority class; therefore, the bankruptcy court sustained the pro rata distribution between the federal and state lienholders.

On appeal, the district court affirmed the judgment of the bankruptcy court, concluding that its judgment was supported by the legislative history of § 724(b). This appeal followed.

## II.

We conclude that the courts below erred in holding that § 724(b) of the Bankruptcy Code operates to divest tax liens of their status as secured claims. We reach this conclusion after thorough scrutiny of both the history of this section of the Code as well as its express language.

### A. The Statutory Scheme

In bankruptcy, a debtor's assets in the hands of the trustee are subject to all liens and encumbrances existing at the date of the bankruptcy (and which are not otherwise invalidated by law). Such liens are recognized as a charge upon the bankrupt's assets. Included among those liens that remain as encumbrances are statutory liens, such as the tax liens at issue here.[4] Accordingly, as a general rule, if a lien is perfected, it must be satisfied out of the asset(s) it encumbers before any proceeds of the asset(s) are available to unsecured claimants, including those having priority (such as holders of administrative claims).[5] *Collier on Bankruptcy* ¶ 507.02[2] (15th ed. 1985).

Insofar as the unencumbered assets of the bankruptcy estate are concerned, Congress has given a special status to certain creditors, commonly referred to as "priority" claimants. Section 507 of the Bankruptcy Code specifies the nature of the claims entitled to treatment as priority claims and the relative order in which they

---

be in the same order as distribution to such holders would have been other than under this section.

(d) A statutory lien the priority of which is determined in the same manner as the priority of a tax lien under section 6823 of the Internal Revenue Code of 1954 (26 U.S.C. 6823) shall be treated under subsection (b) of this section the same as if such lien were a tax lien.

3. Section 726 provides, in pertinent part:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section 507(a) of this title [the priority section], or in paragraph (2), (3), (4), or (5) of subsection (a) of this section [dealing with payment of unsecured claims], shall be made pro rata among claims of the kind specified in each such particular paragraph....

4. A "statutory lien" is defined in the Code as a "lien arising solely by force of a statute on specified circumstances or conditions ... but does not include security interest [a lien created by agreement] or judicial lien [a lien obtained by judgment, levy, sequestration, or other legal or equitable proceeding] ... 11 U.S.C. § 101(47).

5. Simply stated, the trustee in bankruptcy may avoid liens that are not perfected as against a hypothetical bona fide purchaser on the date the petition in bankruptcy is filed (*see* 11 U.S.C. § 545(2)), in which case the claims that underlie such liens are relegated to unsecured status. A federal tax lien is generally perfected against the claim of a purchaser by the filing of a notice of tax lien. *See* § 6323(a) of the Internal Revenue Code of 1954 (26 U.S.C. 6323(a)). It is undisputed that the federal tax liens in this case were so perfected.

are to be paid.[6] These priority claims insure payment, to the extent that available funds permit, of these enumerated types of claims before general unsecured claims are satisfied but, as a general rule, they are subordinate to claims that are secured by a perfected lien against the debtor's property.

Section 724 of the Bankruptcy Code, 11 U.S.C. § 724, however, sets forth an exception to the general rule that priority claims do not affect perfected secured claims.[7] Section 724(b) was derived from § 67(c) of the Chandler Act of 1938 (ch. 575, 52 Stat. 840 (1938)), which had substantially revised the Bankruptcy Act of 1898 (ch. 541, 30 Stat. 544 (1898)). Despite these revisions, the Chandler Act did not alter the established rule that, in determining priorities between competing liens, federal courts look to nonbankruptcy law. *See Lerner Stores Corp. v. Electric Maid Bake Shops*, 24 F.2d 780, 782 (5th Cir. 1928). What § 67(c) did accomplish was the subordination of certain statutory liens to certain "priority" claims, i.e., claims for wages and administrative expenses. This subordination of certain liens to such legislatively-determined "priorities" was a new concept in bankruptcy law. Congress revised the Chandler Act in 1966 (Pub.L. No. 89–495, 80 Stat. 268 (1966)), leaving intact the prevailing rule that priority of statutory liens should be determined under the applicable nonbankruptcy law. *See generally California State Dep't of Employment v. United States*, 210 F.2d 242, 244 (9th Cir.1954) ("[t]he sole concern of Congress in enacting § 67, sub. c was to insure payment of administrative expenses and small wage claims [ahead of certain lien claims]"); S.Rep. No. 1159, 89th Cong., 2d Sess. *reprinted in* 1966 U.S.Code Cong. & Admin.News 2442, 2456, 2463 (citing *Calif. State Dep't of Employment* with approval); 4 *Collier on Bankruptcy* ¶ 67.27[3], 382–83 (14th ed. 1978) ("[A]s to liens subordinated by § 67(c), the bankruptcy court must depend on nonbankruptcy law for rules on marshalling such liens."). In the case at bar, applicable nonbankruptcy law mandates that, as between competing valid statutory liens, "the first in time is the first in right." *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954).

In 1978, Congress again substantially revised the Bankruptcy Code. The prior § 67(c)(3) was renumbered as § 724(b) and, although altered in certain respects, was "derived from § 67(c)(3) of the Bankruptcy Act ... without substantial modification in result." H.R.Rep. No. 595, 95th Cong., 1st Sess. 382; *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6338. Under § 724(b), the first priority in distribution (subsection (1)) is for liens which are "senior" to the tax lien(s). The second priority (subsection (2)) is for those "priority" claims specified in § 507(a)(1)–(6), e.g., administration expenses, wage claims, etc., but only up to the amount of the tax lien(s).[8] The third priority (subsection (3)) is for the tax lien(s). The fourth priority (subsection (4)) is for those liens which are "junior" to the tax lien. The fifth priority (subsection (5)) provides for full payment,

---

**6.** These priority claims, designated in § 507(a)(1)–(6) are those, respectively, for administrative expenses, certain so-called "gap" claims, wage claims, limited contributions to employee benefit plans, certain claims of grain producers and fishermen, and certain layaway deposits of consumer creditors. Section 507(a)(7) contains the priority for payment of certain *unsecured* claims of governmental units, including taxes.

**7.** *See supra* note 2.

**8.** It should be noted that § 507(a) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 374. These amendments, which apply only to cases filed 90 days after July 10, 1984 (Pub.L.

No. 98–353, § 553), added a priority for certain grain producers and fishermen in the fifth position (Pub.L. No. 98–353, § 350(3)). As a consequence, the priority taxes that formerly occupied the sixth priority position are now in the seventh position. At the same time that this change was made, certain stylistic changes were made to § 724 (Pub.L. No. 98–353, § 477), but § 724(b)(2) was not changed to conform to the amendments to § 507(a) until 1986. Section 283(r), Bankruptcy Judges, United States Trustee and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088. Thus, as currently in effect, § 724(b)(2) subordinates the tax lien to the first six priorities.

to the extent possible, of any amounts not paid to the tax lienholders under subsection (3). The final priority is for distribution to the estate.[9] The legislative history clarifies that "[t]he result of these [subsections] are to leave senior and junior lienors and holders of unsecured claims undisturbed." H.R.Rep. No. 595, *supra*, at 382, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6338.

Section 724(b) does not address or define the relative priorities within a particular category of liens. However, § 724(c) provides that "[i]f more than one holder of a claim is entitled to distribution under a particular paragraph of subsection (b) of this section, distribution to such holders under such paragraph shall be in the same order as distribution to such holders would have been other than under this section." In this appeal, the government contends that the directive of § 724(c) mandates resort to nonbankruptcy law to determine the relative priorities between competing tax liens under § 724(b)(3). Under this theory, and the nonbankruptcy "first in time, first in right" principle, the IRS would be entitled to receive the entire balance of the debtor's assets in payment of its superior secured claim. In contrast, the Commonwealth of Kentucky argues for an interpretation of this subsection which would preclude application of nonbankruptcy law since, in its view, the secured status of all tax claims has been abrogated by § 724(b), rendering such liens merely "priority" claims occupying a position between §§ 507(6) and 507(7). Therefore, it contends, resort to § 726(b) of the Code, which

governs payment of priority claims specified in § 507 plus unsecured claims, is proper and under that subsection, payment of such claims "shall be made pro rata."

B. Application of §§ 724(b) and (c)

The District of Columbia Circuit has dealt with a tangential issue involving priority between a Small Business Administration lien and a District lien for unpaid sales taxes. *Pearlstein v. U.S. Small Business Admin.*, 719 F.2d 1169 (D.C.Cir.1983). The court ruled that the later-perfected tax lien was "senior" to the SBA lien under applicable law, which it determined to be the *nonbankruptcy* law of the District of Columbia. Admittedly, this case did not involve competing liens of the same class but rather determination of whether a nontax lien would be considered "senior" to the tax lien under § 724(b)(1). However, the court engaged in an exhaustive analysis of the history of bankruptcy law, particularly as it involved the evolution of § 724 in general. The court noted that:

The statute does not define whether a lien "is senior to such tax lien" (subsection (1)) or "is junior to such tax lien" (subsection (4)), or state upon what basis the determination of those priorities shall be made. There is no indication that when Congress in section 724(b) restructured and restated the provisions covering the distribution of property in the estate that was subject to tax liens, it intended to change the prior settled law and practice that the relative priorities of liens in bankruptcy (*including tax liens subordinated by section 67(c)(3) of the*

**9.** An example of distribution under this section in its simplest form and as envisioned by Congress would be as follows:

| CLAIMS | AMOUNTS |
|---|---|
| Administrative expenses | $1,000 |
| Wages | $2,000 |
| Tax lien (federal or state) | $5,000 |
| Junior lien (determined by reference to applicable lien law) | $2,000 |
| Bankruptcy estate available for distribution | $9,000 |

| | |
|---|---|
| $9,000 | |
| – 3,000 | (administrative expenses and wage claim satisfied out of available tax lien funds of $5,000 under § 724(b)(2)) |

| CLAIMS | AMOUNTS |
|---|---|
| $6,000 | |
| – 2,000 | (tax claim satisfied up to balance of funds remaining after satisfaction of priorities under § 724(b)(3)) |
| $4,000 | |
| – 2,000 | (payment of junior lien under § 724(b)(4)) |
| $2,000 | |
| – 2,000 | (balance paid to tax lienholder in additional partial satisfaction of its lien under § 724(b)(5)) |
| – 0 – | |

This example demonstrates the operation of the Congressionally expressed intent that §§ 724(b)(2) and (3), in effect, allow "priority claimants [to] step into the shoes of the tax collector." H.R.Rep. No. 595, *supra*, at 382, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 6338.

*Chandler Act*) were to be determined according to the non-bankruptcy lien law, or to create a new federal rule governing relative priority between tax and other liens. If Congress had intended to make such a drastic change in existing bankruptcy law, presumably it would clearly and explicitly have so stated or indicated. It did neither.

*Id.* at 1175–76 (emphasis added).

Therefore, it is clear, and the Commonwealth does not dispute, that as between two or more competing *nontax* liens, *non-bankruptcy law* governs their priority. We can see no justifiable reason for treating competing tax liens differently. The Commonwealth points to legislative history stating that, "[i]n effect, a tax claim secured by a lien is treated as a claim between the fifth [now sixth] and sixth [now seventh] priority in a case under Chapter 7 *rather than as a secured claim*" as support for their position. 124 Cong.Rec. H11,098 (Sept. 28, 1978); S17,415 (Oct. 6, 1978). We cannot glean from this language a Congressional intent to extinguish a tax lien's secured status in favor of a simple "priority" claim, identical in status to those priorities set forth in § 507. Such an intent is nowhere stated, and tax liens are repeatedly referred to as "liens," implying the continuation of their secured status. Moreover, the problem inherent in the Commonwealth's proffered explanation becomes apparent when considering a situation involving an intervening junior lien between two competing tax liens. In such a situation, treating both tax liens as "priorities" under § 724(b)(2) and (3) would result in elevating the concededly "junior" tax lien above the lien occupying the superior position under § 724(b)(4).[10] This result cannot be squared with the stated Congressional intent that the status of senior and junior lienors remains intact under the current Code.

We also find support for our result in the fact that § 724, titled "Treatment of certain liens," deals explicitly with priority and distribution problems involving property encumbered by liens. Section 726, titled "Distribution of property of the estate," by its terms mandates pro rata payment only of claims specified in § 507 and subsections (2) through (5) of § 726(a). Under § 724, property is not distributed to the estate (§ 724(b)(6)) until *all* liens, both tax and nontax, are satisfied. Therefore, we construe § 726 to govern only distributions from property which has become part of the debtor's "estate." Under this reading, the distribution scheme specified for multiple claims in a priority class which is set forth in § 726 (pro rata) has no application to distribution under § 724 since, by its terms, property distributed under that section does *not* become part of the estate

---

10. An example of the operation of the distribution scheme advanced by the Commonwealth and accepted by the courts below is illustrative:

| CLAIMS | AMOUNTS |
|---|---|
| (listed in order of their priority under applicable non-bankruptcy lien law) | |
| First mortgage (senior lien) | $1,000 |
| Priority claims (§ 507(a)(1)–(6)) | $3,000 |
| State tax lien | $2,000 |
| Second mortgage (junior lien) | $4,000 |
| Federal tax lien | $3,000 |
| Bankruptcy estate available for distribution | $8,000 |

| | |
|---|---|
| $8,000 | (Bankruptcy estate available for distribution) |
| – 1,000 | (satisfaction of first mortgage under § 724(b)(1)) |
| $7,000 | |
| – 3,000 | (satisfaction of priority claims in full from tax lien "pool" of $5,000 under § 724(b)(2)) |
| $4,000 | |
| – 2,000 | (remainder of tax lien "pool" distributed pro rata between both tax lienors under § 724(b)(3)) |

| CLAIMS | AMOUNTS |
|---|---|
| $2,000 | |
| – 2,000 | (remainder given to second mortgage holder |
| – 0 – | in partial satisfaction under § 724(b)(4)) |

As demonstrated, the federal tax lienor has obtained partial satisfaction for its claim at the expense of the superior § 724(b)(4) second mortgage. *See Matter of Stroud Wholesale, Inc.,* 37 B.R. 735, 738 (Bankr.E.D.N.C.1984) (rejecting the state's challenge to the constitutionality of § 724), where the court reasoned:

The result of the subordination process is that the statutory tax liens retain their status as secured claims, but their treatment in the scheme of distribution is altered so that, instead of being paid ahead of secured creditors and all priority creditors, they are paid after the secured creditors with a senior lien and after the priority creditors [enumerated in § 724(b)(2)].

*But cf., In re Barry,* 31 B.R. 683 (Bankr.S.D.Ohio 1983).

unless or until all secured claims have been satisfied.[11]

Admittedly, resort to nonbankruptcy law to determine the status of competing tax liens may, in certain instances, require a complex and sophisticated distribution analysis.[12] However, this result is inescapable where the intent of Congress is manifested by both the express language of § 724(b) of the Code as well as the stated purpose to continue prior practice without substantial modification.

 Thus, as under prior law, we hold that the priority of all competing liens, both tax and nontax, is to be determined by reference to nonbankruptcy law. In the case at bar, since the competing liens involve a federal tax, federal law controls. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960). Since the IRS lien was the first to be perfected, the entire balance of debtor's property is ordered distributed to the United States in satisfaction of its lien.

**11.** *See e.g., In re Granite Lumber Company,* 63 B.R. 466 (Bankr.D.Mont.1986), where the court held that priority claims were only to be satisfied with funds intended to satisfy lienholders under § 724(b) when no funds were available from estate property under § 726. The court in this case was faced with five competing secured tax liens. In ordering payment under § 724 first to the tax lien which was given superior priority under applicable nonbankruptcy law, and second to a junior lienor under § 724(b)(4) ahead of the other four later-perfected tax liens, the court followed nonbankruptcy law in determining priorities among *both* the tax and nontax liens. *Id.* at 469–71.

**12.** Using the same figures as the example in footnote 10, the following distribution scheme results under our holding today:

$8,000 (estate property available for distribution)
− 1,000 (satisfaction of first mortgage under § 724(b)(1))
$7,000

− 2,000 (to priority claimants who "step into the
$5,000 shoes" of the state tax lienor under § 724(b)(2))

\* Since no balance remains for distribution on the state tax lien under § 724(b)(3), the junior nontax lien is satisfied next.

− 4,000 (full payment to second mortgage holder un-
$1,000 der § 724(b)(4))

− 1,000 full satisfaction of priority claims out of re-
− 0 − mainder, which is allocated to the federal tax lien and subordinated to the remaining priority claimants under § 724(b)(2).

If the estate property had totalled $12,000 instead, the federal tax lien would have received payment of $2,000 under § 724(b)(3). Since no further intervening junior liens exist, the remaining balance of $2,000 would be distributed in payment of the state tax lien under § 724(b)(5). *See, e.g.,* example (2) in 4 *Collier on Bankruptcy* ¶ 67.281[4] at 438–39 (14th ed. 1978). That this makes for a more complicated distribution than would a *pro rata* formula is a problem for Congress to address.