In the Matter of TABONE, INC., Debtor.

John W. HARGRAVE, Trustee, Plaintiff,

v.

TOWNSHIP OF PEMBERTON, Defendant.

Bankruptcy No. 91–10897.
Adv. No. 94–1247.

United States Bankruptcy Court, D. New Jersey.

Dec. 21, 1994.

John W. Hargrave, Trustee, John W. Hargrave & Associates, Westmont, NJ.

Sharon A. Hendren, Ferg, Barron & Gillespie, Moorestown, NJ, for Pemberton Tp.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

On this motion, we are reconsidering our denial of the trustee's summary judgment motion seeking disgorgement of monies paid to the Township of Pemberton ("Township") following the sale of assets of debtor's estate.

### FACTS

Tabone, Inc. ("debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 25, 1991. Debtor's case was converted to Chapter 7 on November 19, 1992.

Debtor's primary assets consisted of property located at 410 Trenton Road, Browns Mills, Township of Pemberton, Burlington County (also known as Block 526, Lot 1.02 on the township's tax map), and an associated liquor license. On September 27, 1993, the sale of debtor's property for a combined purchase price of $175,000.00, was approved, $25,000 of which was to be allocated to the liquor license. The Chapter 7 trustee consummated the sale on February 7, 1994.

At the time of the sale of debtor's property, three consensual liens encumbered the property, totalling $117,396.19.[1] Chapter 7 administrative expenses had accrued in the amount of $53,983.81,[2] and pre-petition tax

---

1.

| | |
|---|---|
| $79,496.19 | Independence Financial Corporation mortgage |
| 25,900.00 | Mid Jersey Bank mortgage |
| 12,000.00 | Mid Jersey Bank mortgage assigned to Ed Christopher. |

2.

| | |
|---|---|
| $23,012.88 | Attorney's fees |
| 5,430.00 | Trustee's commission |
| 1,090.78 | Accountant's fees |
| 5,731.98 | Pemberton Township's real estate taxes/trash fees for 1993 and 1994 |

liens had attached in favor of Pemberton Township in the amount of $17,655.31,[3] and the Internal Revenue Service ("IRS") in the amount of $6,345.25.[4]

From the proceeds of the sale of the liquor license and real estate, the trustee paid all consensual liens, real estate commissions, and all secured and administrative claims of the Township ($27,363.96), and placed $6,000 in escrow to cover the federal tax lien. Following distribution, it became apparent that there would be insufficient assets to satisfy the Chapter 7 administrative claims in full. Asserting that the Township was overpaid, the trustee filed an adversary complaint on July 14, 1994 seeking return of a portion of the amounts paid to the Township under 11 U.S.C. §§ 542 and 549, and subordination of all of the tax claims to the estate's administrative claims pursuant to 11 U.S.C. § 724.

On the trustee's motion for summary judgment and the Township's cross-motion for summary judgment, we determined that under New Jersey law, statutory real estate tax liens arising prior to the filing of the petition were superior to all other liens against the property, and that the Township was entitled to retain the entire amount of $17,655.31 paid on account of such liens. With respect to the post-petition taxes that were satisfied, we ordered that to the extent that the amount of post-petition taxes paid exceeded the Township's pro rata share of administrative expenses, that amount must be refunded to the trustee.

Upon the trustee's motion for reconsideration, we have reexamined the applicable statutes and case law as they relate to this case, and have determined that the trustee is correct that 11 U.S.C. § 724(b) should apply in this case, although our analysis will create some variation in the trustee's calculations.

## DISCUSSION

### 1. Notice to Creditors and Order Approving Sale

We must first take up the contention by the Township that we are precluded from revising the terms of the notice of sale and the order approving the sale entered in this case, particularly with respect to the payment of real estate taxes.

In the trustee's "Information for Notice of Private Sale by Trustee", he proposed to sell debtor's bar, fixtures, equipment, inventory, and real estate, for $150,000.00, together with debtor's plenary liquor retail consumption license for an additional $25,000.00. Such sale was to be "free and clear of liens and on an 'as is' basis." From the proceeds of the sale, the trustee proposed to pay the "real estate taxes, municipal charges, a six (6%) percent commission to Richard A. Karpf, Commercial Industrial Real Estate brokers and mortgages on [the] property."

The only objection was filed by debtor's president, John Tabone, on September 9, 1993, seeking additional time to arrange his own mortgage. This objection was denied on September 13, 1993. On September 27, 1993, an order was entered allowing the trustee to consummate the sale of debtor's assets for the sale price of $175,000.00, free and clear of all liens. No provision was made for distribution of proceeds in the order approving the sale.

The Township contends that the Information for Notice of Private Sale, which specified that real estate taxes and municipal charges would be paid, binds the trustee to pay all such charges. As well, the Township submits that without full payment of the real

---

|       | 17,500.00 | Realtor's commission |
|-------|-----------|----------------------|
|       | 300.00    | Clerk's charges (estimated) |
|       | 918.17    | Trustee expenses. |

**3.** At the time of closing, there were outstanding real estate property taxes, trash charges, and accrued interest owed to Pemberton Township in the amount of $27,383.96, broken down as follows:

| Year | Property Taxes | Trash | Total |
|------|----------------|-------|-------|
| 1988 | 0.00 | 231.37 | $ 231.37 |
| 1989 | $4,594.91 | 269.65 | 4,864.56 |
| 1990 | 6,541.20 | 252.07 | 6,793.27 |
| 1991 | 5,540.32 | 225.79 | 5,766.11 |
| 1992 | 4,851.97 | 186.73 | 5,038.70 |
| 1993 | 4,375.93 | 161.82 | 4,537.75 |
| 1994 | 1,151.95 | 42.28 | 1,194.23 |

**4.** The Internal Revenue Service held a perfected security interest in debtor's property evidenced by a Notice of Federal Tax Lien dated February 22, 1990 in the amount of $6,345.25, representing unpaid FUTA and WT–FICA taxes, penalties and interest for the 1988 and 1989 tax years.

estate liens, the sale cannot be free and clear of the liens. The trustee responds first that the language of the Notice does not provide for full payment of the taxes, and second that at the time of his distribution of the sale proceeds, he failed to take into consideration the impact of 11 U.S.C. § 724(b).[5] Since he was not authorized by the Code to distribute the funds in the manner that he did, the trustee asserts now that such funds should be disgorged back to the estate for a corrected redistribution.

■ We find on the question of the trustee's authority to sell the debtor's assets free and clear of all liens, that the trustee did have the authority pursuant to 11 U.S.C. § 363(b), (f)(2) and (f)(3) to sell the estate's property free and clear of all liens. A sale free and clear of the interest may occur if any one of the specified conditions under § 363(f) have been met.[6] 2 LAWRENCE P. KING, *Collier on Bankruptcy*, ¶ 363.07, 363–33 (15th Ed.1994). *See also In re Elliot*, 94 B.R. 343, 345 (E.D.Pa.1988).

The Notice of Private Sale issued by the trustee clearly states that the sale was to be free and clear of all liens, and the order shortening time gave all interested parties opportunity to object or to seek clarification either by written submission or orally at the hearing. As the Township did not offer any objection, it may be deemed to have consented to the sale for purposes of section 363(f)(2). *See In re Elliot*, 94 B.R. 343 (E.D.Pa.1988); *In re Shary*, 152 B.R. 724 (Bankr.N.D.Ohio 1993); *In re Gabel*, 61 B.R.

661 (Bankr.W.D.La.1985). *See also In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989) (creditor's failure to make a timely objection constitutes acceptance of a Chapter 13 plan).

In addition to the Township's implied consent to the sale, there was a factual basis for reliance on section 363(f)(3), which requires the sale price to be greater than the aggregate value of all liens on the property. The sale price of the real estate at 410 Trenton Road was $150,000.00. The liens totaled $141,396.75, including $117,396.19 for consensual mortgages, $17,655.31 to Pemberton Township for pre-petition tax liens and trash charges, and $6,345.25 to the Internal Revenue Service.

■ We can conclude that under either provision, the trustee was authorized to sell this property free and clear of all liens. Since the Notice of Private Sale did not specifically express that all real estate taxes would be paid, and the order approving the sale made no provision for the manner of distribution, we are not precluded from clarifying the order approving the sale and correcting the trustee's error in the distribution of proceeds of the sale.

In order to understand the application of 11 U.S.C. § 724(b) and its impact on certain liens, we must first clarify the relative positions of the respective liens attached to debtor's property.

### 2. *Pre–Petition Tax Claims of Pemberton Township*

Pursuant to N.J.S.A. 54:5–6, each claim of a municipality for real estate property taxes

---

**5.** The parties did not address whether relief from the order would be available under Rule 9024 or Fed.R.Civ.P. 60. Under Rule 60(b)(1), mistake, inadvertence and excusable neglect might be available to the trustee as bases for modification of the September 27, 1993 order. A motion seeking relief under Rule 60(b)(1) factors must be made within one year of the date of entry of the order, in this case, September 18, 1993. The trustee's adversary complaint was filed on July 14, 1994.

**6.** 11 U.S.C. § 363 provides in pertinent part: (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

. . . . .

(f) The trustee may sell property under subsection (b) ... of this section free and clear of any

interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(inclusive of all interest, penalties and costs of collection) is perfected as a lien against the assessed property as of January 1st of the year for which the taxes are assessed.[7] *See In re Isley,* 104 B.R. 673, 676 (Bankr.D.N.J. 1989). In this case, Pemberton Township holds a perfected tax lien for each tax year preceding the filing of the petition for which delinquent taxes remain due, including the year during which the petition was filed. *Id.* at 675. The tax liens include $5,766.11 for the 1991 tax year, $6,793.27 for 1990, $4,864.56 for 1989, and $231.37 for 1988, totalling $17,655.31. The three tax liens have priority status over other encumbrances against the assessed real estate, regardless of when such encumbrances arose. N.J.S.A. 54:5–9. The amounts indicated include trash charges, which are assessed in the same manner as property taxes, under N.J.S.A. 40:66–12.

### 3. *Federal Tax Lien*

The tax lien held by the Internal Revenue Service, in the amount of $6,345.25, is dated February 7, 1990 and was recorded on February 22, 1990. Pursuant to a consent order entered on February 22, 1994, debtor and the IRS stipulated that the federal tax lien would be released on the debtor's real estate to facilitate the property's subsequent sale, and the lien would then attach to the proceeds of the sale. The IRS would receive distribution pursuant to 724(b). The consent order makes no provision as to the manner of distribution.

A federal tax lien arises when a "person liable to pay any tax neglects or refuses to pay the same after demand." 26 U.S.C. § 6321. The lien is considered to have been imposed as of the date of the assessment. 26

U.S.C. § 6322; *see Crystal Bar, Inc. v. Cosmic, Inc.,* 758 F.Supp. 543 (D.S.D.1991); *U.S. v. Carson,* 741 F.Supp. 92 (E.D.Pa.1990). A federal tax lien does not take automatic senior priority but may be junior to choate mortgages at the time of the subsequent federal lien. 26 U.S.C. § 6323(a); *see In re May Reporting Servs., Inc.,* 115 B.R. 652, 656 (Bankr.D.S.D.1990).[8] We are apprised by the trustee in this case that the consensual liens preceded the federal tax lien. Therefore, the federal tax lien is junior to the three identified mortgages, which may be characterized as intervening lienholders between the township's tax liens and the federal tax lien.[9]

We can then readily recite the following priority of interests in debtor's real estate as they existed prior to the application of section 724(b), as follows:

1) Pre-petition tax liens held by the Township of Pemberton for the years 1988 through 1991 in the total amount of $17,655.31.

2) Secured claims of the mortgagees in the total amount of $117,396.19.

3) Federal tax lien in the amount of $6,345.35.

### 4. *Application of 11 U.S.C. § 724(b)*

With the respective priorities established as to the existing liens and interests against debtor's real property, we turn next to 11 U.S.C. § 724(b). Section 724(b) provides:

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

---

7. N.J.S.A. 54:5–6 was amended to change the perfecting date from January 1st to the first day of the fiscal year of the municipality. L.1991, c. 75, sec. 42, eff. March 28, 1991. As the effective date of the amendment is after the date of debtor's petition, it has no impact here.

8. The issue of the priority of the IRS lien with respect to the township's tax liens has no impact on this decision, although it is noted that pursuant to 26 U.S.C. § 6323(b)(6)(A) and N.J.S.A. 54:5–9, the township's tax liens would hold priority status against the IRS lien.

9. "[S]ubsection [724(c)] applies where there is more than one tax lien on the property to require appropriate distributions among holders of the various tax liens," however, "[n]either this subsection nor subsection (b) solves the problem that arises when there are more than one tax lien with nontax liens holding intermediate priority positions." 4 LAWRENCE P. KING, *Collier on Bankruptcy* ¶ 724.04 at 724–10 (15th ed. 1994).

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

11 U.S.C. § 724(b).

Section 724 provides an exception to the general rule that administrative claims should be satisfied from debtor's unencumbered assets rather than affecting the interests of perfected, secured claimants. *In re Darnell*, 834 F.2d 1263, 1265–66 (6th Cir. 1987). Section 724(b) serves to subordinate certain liens, those that secure an allowed claim for taxes, to certain administrative claims of the state, those specified in section 507(a)(1)–(6). *Id.* at 1266; *In re A.G. Van Metre, Jr. Inc.*, 155 B.R. 118, 122 (Bankr. E.D.Va.1993); *In re Carlisle Court, Inc.*, 36 B.R. 209, 218 (Bankr.D.D.C.1983). The subordination applies only to the extent of the tax lien, with partial payment of the tax lien where the administrative expenses are less than the amount of the tax lien and no payment where the administrative expenses are

greater than or equal to the tax lien. Any remaining payment due on the tax lien is paid following payment to all junior lienholders.

Under section 724(b)(1), we consider first whether there are any lienholders senior to the Township's position. Since there are no such claimants, we turn next, under section 724(b)(2), to the administrative and priority claimants, as defined in section 507(a)(1)–(6), which "step into the tax claimant's shoes" on the priority list to the extent of the allowed secured tax claim. Here, the amount of the Township's allowed secured claim is $17,655.31. The estimated amount due to priority claimants is $53,983.81. Therefore, priority claimants may receive distribution under section 724(b)(2) up to the amount of $17,655.31 in place of the municipality's secured interest.

■ It is the trustee's position that in calculating the extent of the allowed tax liens for § 724(b)(2) purposes, we should add to the Township's allowed secured claim the federal tax lien of the IRS in the amount of $6,345.25 to produce one pool of $24,000.56 which may be applied to administrative claims. We have determined to omit the federal tax lien from the 724(b)(2) calculation because we find that the federal tax lien may be satisfied from the proceeds of the sale of debtor's liquor license. Although the attachment of a lien to a liquor license is generally prohibited under New Jersey law, and even though a liquor license is not considered to be property for state definitional purposes,[10] state law cannot be used to prevent the attachment of a federal tax lien by the Internal Revenue Service. *The Boss Co., Inc. v. Board of Commissioners of Atlantic City*, 40 N.J. 379, 387, 192 A.2d 584 (1963).

In *The Boss Co.*, the New Jersey Supreme Court addressed the conflict between the prohibition under N.J.S.A. 33:1–26 against lien attachment and the provisions of 26

**10.** N.J.S.A. 33:1–26 provides in pertinent part: Under no circumstances, however, shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except for payment of taxes, fees, interest

and penalties imposed by any State tax law for which a lien may attach pursuant to R.S. 54:49–1 or pursuant to the State Tax Uniform Procedure Law, R.S. 54:48–1 et seq., or any similar State lien of tax, except to the extent expressly provided by this chapter.

U.S.C. § 6321, whereby a lien in favor of the United States for unpaid excise taxes attaches to all property and rights to property. The court concluded that "as far as the federal government is concerned, N.J.S.A. 33:1-26 cannot immunize liquor licenses from the attachment of federal liens, for ... 'state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States.'" *Id.* at 387 (quoting *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135, 1141 (1958)). *See also Sea Girt Restaurant & Tavern Owners Ass'n, Inc.,* 625 F.Supp. 1482, 1487–88 (D.N.J.1986) (agreeing with the *Boss* decision); *In re Cooper,* 147 B.R. 678, 683 (Bankr.D.N.J.1992).

In this case, the IRS tax lien attaches to all of debtor's property, including the $25,000 of proceeds from the sale of debtor's liquor license, and we will look first to those proceeds to satisfy the federal tax lien. Accordingly, the federal tax lien of $6,345.25 should be paid from the liquor license proceeds, leaving the remainder of the proceeds available for payment of administrative claims.[11]

■ Parenthetically, we note that even if the liquor license proceeds were not available to satisfy the tax lien, we would not add the federal tax lien to the Township's tax liens in the § 724(b)(2) calculations regarding distribution of the real estate proceeds.

> [W]hen considering a situation involving an intervening junior lien between two competing tax liens ..., treating both tax liens as "priorities" under § 724(b)(2) and (3) would result in elevating the concededly "junior" tax lien above the lien occupying the superior position under § 724(b)(4). This result cannot be squared with the stated Congressional intent that the status of senior and junior lienors remains intact under the current Code.

*In re Darnell,* 834 F.2d 1263, 1268 (6th Cir. 1987). We recognize that the language in *Darnell* is dicta, and we have found no other decisions addressing this particular issue. However, we view favorably the hypothetical determination expressed in *Darnell. See* 834 F.2d at 1268 n. 10, 1269 n. 12. If we were to add the federal tax lien to the Township's tax liens for § 724(b)(2) purposes, we would be elevating the federal tax lien above the consensual lienholders in violation of § 724(b)(1). As noted in *Darnell,* "[t]hat this makes for a more complicated distribution than would a *pro rata* formula is a problem for Congress to address." *Id.* at 1269 n. 12.

Continuing with our application of section 724 to debtor's real property, under § 724(b)(3), the Township may receive a distribution only to the extent that its tax lien exceeds the amount distributed under § 724(b)(2) to the administrative claimants. Since the Township's liens do not exceed the administrative and priority claims, the Township is not entitled to any payment under § 724(b)(3).

Notwithstanding the clear statutory direction that a tax lienholder may only be paid under § 724(b)(3) to the extent that its lien exceeds the amount of priority claims paid under § 724(b)(2), the Township suggests that we must read § 724(b)(3) to require payment in full of the Township's tax liens, before payment to the junior consensual mortgagees. Otherwise, the Township asserts, we would be unable to reconcile the statute with the legislative history, which claims to "leave senior and junior lienors and holders of unsecured claims undisturbed" subject to subordination of administrative claims. H.R.Rep. No. 595, 95th Cong., 1st Sess. 382 (1977), U.S.Code Cong. & Admin.News 1978 pp. 5787, 6338. This apparent contradiction may be reconciled by a review of the structure and purpose of the legislation. The legislative history provides that:

> The order of distribution of property subject to a tax lien is as follows: First, to holders of liens senior to the tax lien; second, to administrative expenses, wage claims, and consumer creditors that are granted priority, but only to the extent of the amount of the allowed tax claim secured by the lien. In other words, the priority claimants step into the shoes of the tax collector. Third, to the tax claim-

---

11. Application of the section 724(b) subordination provisions has no impact on the distribution of the liquor license proceeds, since the only lienholder is the IRS.

ant, to the extent that priority claimants did not use up his entire claim. Fourth, to junior lien holders. Fifth, to the tax collector to the extent that he was not paid under paragraph (3). Finally, any remaining property goes to the estate.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 382, (1977) U.S.Code Cong. & Admin.News 1978 p. 6338. The aim of this statute is to substitute administrative claimants for the tax claimant, to the extent of the tax claimant's claim, and to move payment of the tax claimant until after payment of the junior lienholders. *See In re Vicon Recovery Sys., Inc.,* 1991 WL 420182, *2 (D.N.J. Nov. 26, 1991); *In re Healthco Intl., Inc.,* 174 B.R. 174 (Bankr.D.Mass.1994); *see also* 4 LAWRENCE P. KING, *Collier on Bankruptcy* ¶ 724.03 at 724–5–6 (15th ed. 1994) ("The effect of section 724(b) is to treat a tax lien as a claim ahead of the priority for taxes (now section 507(a)(7)) and after the other priorities under section 507(a) rather than as a secured claim."). Therefore, the substitution of administrative claims for tax liens does not impact upon the priority of other senior and junior lienholders. The other lienholders will be paid at the same monetary point, regardless of the recipient of the funds, as if payment had been made to the tax claimant. The only claimant affected is the tax lienholder, because under this provision, "assets are to be distributed from the debtor's estate to pay higher priority claims before the tax claims are paid, even though the tax claims are properly secured." 124 Cong.Rec. H11014 (daily ed. Sept. 28, 1978); S17431 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

The remaining proceeds of the real estate are distributed under § 724(b)(4) to the mortgagees and then under § 724(b)(5) to the Township of Pemberton on account of its pre-petition tax liens. Any remainder is then to be distributed to the estate pursuant to section 724(b)(6).

To recap, the distribution scheme for the proceeds of the real estate and liquor license should be as follows:

1. Disburse $25,000 from the sale of the liquor license to the IRS in the amount of their tax lien ($6,345.25) and the remainder pro rata toward Chapter 7 administrative claims.[12] The claims will include 1993 and 1994 taxes and trash charges due to the Township,[13] as well as any Chapter 11 United States Trustee quarterly fees and clerk's charges. *See, e.g., In re Juhl Enterprises, Inc.,* 921 F.2d 800 (8th Cir.1990).

2. Disburse $150,000 from the sale of real estate as follows:

   a. to administrative claimants pro rata up to $17,655.31;

   b. to consensual lienholders ($117,-396.19);

   c. to the Township on account of post-petition liens ($17,655.31);

   d. to debtor's estate.

The Township will be required to return the portion of the moneys previously distributed that exceeds the total of the amount to be received by the Township on account of pre-petition liens from the sale of the real estate plus the amount to be received by the Township as its pro rata share of the distribution to Chapter 7 administrative claimants under this determination. The return of moneys will not be required until administrative expenses are fixed and the final calculations for disbursement are completed.

Counsel for the trustee shall submit an order in conformance with this opinion.

---

**12.** It is believed that $17,500 has already been disbursed as a real estate commission. We do not determine here whether a disgorgement of the portion of the fee exceeding the pro rata entitlement of the recipient is required.

**13.** The 1992 taxes were assessed during the Chapter 11 administration of the estate and therefore are characterized as Chapter 11 administrative claims under 11 U.S.C. § 503(b) and 507(a)(1). These claims are subordinated to the Chapter 7 administrative claims under 11 U.S.C. § 726(b).