THE BOSS CO., INC. T/A THE CLICK, AND CHRIS L. GROSS, DISTRICT DIRECTOR OF INTERNAL REVENUE, CAMDEN, NEW JERSEY, APPELLANTS, v. BOARD OF COMMISSIONERS OF THE CITY OF ATLANTIC CITY, CLOCK BAR & GRILLE, INC., AND SYCUR, INC., AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, RESPONDENTS.

Argued April 23, 1963—Decided July 1, 1963.

*Mr. Richard M. Roberts* of the United States Department of Justice, Washington, D. C., argued the cause for appellants (*Mr. Alfred Abbotts,* appearing; *Mr. David M. Satz, Jr.,* United States Attorney, attorney for appellants; *Mr. Vincent J. Commisa,* Assistant United States Attorney, *Mr. Richard A. Levin,* Assistant United States Attorney, *Mr. Sidney E. Zion,* Assistant United States Attorney, *Mr. Dennis C. De-Berry,* attorney, Regional Counsel's Office, Internal Revenue Service, of counsel, on the brief).

*Mr. Herbert S. Alterman,* Deputy Attorney General, argued the cause for respondent, Division of Alcoholic Beverage Control (*Mr. Arthur J. Sills,* Attorney General, attorney; *Mr. Alterman,* of counsel).

*Mr. Chaim H. Sandler,* Associate City Solicitor, argued the cause for respondent, City of Atlantic City (*Mr. Murray Fredericks,* City Solicitor, attorney).

*Mr. Thomas W. Rauffenbart,* attorney for respondents, Clock Bar & Grille, Inc., and Sycur, Inc., joined, by permission of the Appellate Division, in the brief of City of Atlantic City.

The opinion of the court was delivered by

SCHETTINO, J. The Boss Co., Inc., and the District Director of Internal Revenue appealed to the Appellate Division from the Conclusions and Order of the Director of the Division of Alcoholic Beverage Control dismissing their appeals and affirming the action of the Board of Commissioners of the City of Atlantic City in refusing to grant an application by Boss that liquor license C-188 be transferred to it, and in granting the application of Clock Bar & Grille, Inc., to renew said license and to transfer it to Sycur, Inc. While the appeal was pending, we certified the case on our own motion.

While Clock was the holder of a liquor license for premises known as 19–21 South Tennessee Avenue, Atlantic City, it

became indebted to the federal government in the amount of $25,914.76, plus interest, for unpaid excise taxes which were assessed on August 15, 1958. By virtue of section 6321 of the Internal Revenue Code of 1954, a lien arose in favor of the United States upon "all property and rights to property" belonging to Clock. 26 *U. S. C. A.* § 6321. On March 15, 1961 a revenue officer, acting pursuant to 26 *U. S. C. A.* § 6331, attempted to seize all rights of Clock in and under the liquor license. That same day notice was given to Clock that the property would be publicly sold on April 10 by the District Director.

On April 6 the Board granted an application by Clock for a transfer of the license from 19–21 South Tennessee Avenue to 22–24 South South Carolina Avenue.

On April 10 the licensee's property was sold to Boss by the District Director, and two days later Boss made application to the Board for the transfer of the license to it and the re-transfer of the license to 19–21 South Tennessee Avenue. Clock opposed the application and a public hearing was held. The Board denied this application on May 4 on the ground of lack of jurisdiction to grant the person-to-person transfer because Boss' application was not accompanied by a separate written consent to the transfer by the original licensee, Clock, as required by *N. J. S. A.* 33 :1–26. The Board was also of the opinion that Clock had no property rights in the license which could be subjected to levy or sale because *N. J. S. A.* 33 :1–26 provides, *inter alia,* that under no circumstances shall a license or rights thereunder be deemed property. Boss and the District Director appealed to the Division of Alcoholic Beverage Control. The appeal was heard on June 26.

On May 27 Sycur, with Clock's written consent, applied to the Board for the transfer of said license to it for premises at 22–24 South South Carolina Avenue. Boss and the District Director opposed the application, and a public hearing was held on June 29. That day the Board granted Clock's application for renewal of liquor license C-188 for the term ending June 30, 1962, as well as its transfer to Sycur. Again, Boss

and the District Director appealed to the Division of Alcoholic Beverage Control.

All parties agreed that, inasmuch as the issues in both appeals were the same, they should be combined and decided together, with the decision in the earlier appeal binding the later one. The Conclusions and Order of the Director of the Division of Alcoholic Beverage Control adopted the Hearer's Report in which both reasons given by the Board for the denial of the transfer to Boss—lack of jurisdiction to grant the application and the absence of property rights in the license subject to levy and sale by the federal government—were found valid, and the Director affirmed the actions of the municipal board.

The sole issue before us is whether a liquor license and any rights thereunder are property or rights to property within the meaning of section 6321 of the Internal Revenue Code. The United States Supreme Court has held that, in determining whether and to what extent a taxpayer has property or rights to property to which a federal lien can attach, state law controls; but once it has been determined that state law has created a sufficient interest in the taxpayer to satisfy the requirements of section 6321, federal law governs the attachment and priority of the lien. *Aquilino v. United States,* 363 *U. S.* 509, 80 *S. Ct.* 1277, 4 *L. Ed. 2d* 1365 (1960) ; *United States v. Bess,* 357 *U. S.* 51, 78 *S. Ct.* 1054, 2 *L. Ed. 2d* 1135 (1958). Our Alcoholic Beverage Law in *N. J. S. A.* 33 :1–26 provides : "Under no circumstances, however, shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except to the extent expressly provided by this chapter."

■ The language alone of our statute is not dispositive of the issue, for a state legislative pronouncement in and of itself is insufficient to determine the existence or nonexistence of a property interest within the meaning of section 6321. In *Fidelity & Deposit Co. of Md. v. New York City Housing Authority,* 241 *F. 2d* 142 (2 *Cir.* 1957), Judge Medina noted

that in adopting legislation regarding federal liens for taxes, Congress took for granted the existence of state laws creating and maintaining various interests, but fashioned the statute to require the courts to determine for federal purposes whether a state-created interest was property or rights to property. "That classification of interests is a federal question; the existence of the interests to be federally classified, however, is solely a question of state law." 241 *F. 2d,* at *p.* 144. And in *In re Halprin,* 280 *F. 2d* 407 (3 *Cir.* 1960), Judge Hastie said that the application of section 6321 involves a two-step inquiry in which both state and federal law must be consulted. "State law creates legal interests and defines their incidents, but the ultimate question whether an interest thus created and defined falls within a category stated by a federal statute requires an interpretation of that statute, which is a federal question." 280 *F. 2d,* at *p.* 409. The court in *Halprin* applied its understanding of the nature and characteristics of property rights in order to decide whether the intangible right in issue was one Congress meant to include within the phrase "property and rights to property."

A liquor license in New Jersey vests a personal right in the licensee to conduct a business otherwise illegal. As such, it is merely a temporary permit or privilege. *Mazza v. Cavicchia,* 15 *N. J.* 498, 505 (1954); *In re Schneider,* 12 *N. J. Super.* 449, 456 (*App. Div.* 1951). But once granted, it is protected against arbitrary revocation, suspension or refusal to renew. See *Blanck v. Mayor & Borough Council,* 38 *N. J.* 484, 489 (1962); *N. J. S. A.* 33:1–22, 33:1–31.

This license has value—not merely the personal value to the licensee that inheres in the right to engage in the business of selling intoxicating liquors, but also the monetary value that arises from the power possessed by the licensee to substitute, with the municipal consent, some other person in his place as licensee. Moreover, in limited situations, the personal nature of the license is sacrificed so that this value can justly accrue to the benefit of third parties. *N. J. S. A.* 33:1–26 provides that if the operation of the business covered by the license

devolves by operation of law upon a person other than the licensee, the issuing authority may, in its discretion, "extend said license for a limited time, not exceeding its term, to the executor, administrator, trustee, receiver or other person upon whom the same has devolved by operation of law as aforesaid." If the license is extended, the holder thereof can exercise the same rights as the original licensee, and by conducting the business or converting the license into money by consenting to a person-to-person transfer, the estate of a deceased licensee will benefit or the assets available for creditors of a financially troubled licensee will be increased. Thus, the liquor license is a legal interest in the nature of an economic asset, created and protected by statute, and because it has monetary value and is transferable, either by consent of the licensee or by operation of law (in the special statutorily-described sense), it possesses the qualities of property.

The somewhat unusual situation before us—the question whether a liquor license can be classified as "property" for federal purposes despite a legislative pronouncement to the contrary—has arisen in two cases. In *Midwest Beverage Co. v. Gates,* 61 *F. Supp.* 688 (*N. D. Ind.* 1945), the licensee sought an interlocutory and permanent injunction to enjoin officials of the State of Indiana from enforcing provisions of a statute which would cancel the license before it was due to expire. Plaintiff argued that the statute deprived it of its property rights without due process of law in violation of the Fourteenth Amendment. The officials moved to dismiss for lack of jurisdiction of the court to hear the cause on the ground, *inter alia,* that no property rights of the plaintiff were involved. The statute under which plaintiff's license was issued provided that no person was deemed to have a property right in a liquor license, nor was the license itself or the enjoyment thereof to be considered a property right.

The District Court conceded that while the license as such may not be property, the use and enjoyment of it gave its possessor something of value which had all the qualities of property. The court noted that under Indiana law the license

could be transferred from one holder to another, subject to the terms and regulations of the state liquor commission, and that an administrator or executor of an estate of a deceased licensee or a receiver or trustee in bankruptcy could continue the business. Once granted, the court declared, "the use of the permit * * * has the elements of property irrespective of what the Legislature may declare about the permit itself, and * * * is property within the meaning of the due process clause of the Federal Constitution." 61 *F. Supp.*, at *p.* 691.

The rationale of *Midwest* was adopted and applied to a case arising under section 6321. *Deitsch v. Board of Liquor License Comm'rs*, 58–1 *U. S. Tax Cas.* ¶ 9496, at *p.* 68, 334 (*Md. Cir. Ct.* 1958). Like Boss, Deitsch purchased a liquor license from the District Director of Internal Revenue, which the latter seized when the original licensee became delinquent in payment of federal income taxes, and his application to have the license transferred to him was denied by the respondent board on the sole ground that the license was not property or a property right. A Maryland statute declares that liquor licenses are not to be regarded as property or as conferring any property rights. On appeal, the court determined that the legislative purpose was to make clear that a license, at least insofar as the state was concerned, was not entitled to the ordinary protection of the constitution usually afforded property rights. However, the court was of the opinion that, except for that purpose, the license could be considered property. Noting that other sections of the statute provide for the transfer of a license by the personal representative of the estate of a deceased licensee and for the sale or assignment of a license by the licensee or a receiver or trustee, the court stated: "There is no doubt that the license in this case is something of value, and the 'something' has attributes of property." 58–1 *U. S. Tax Cas.* ¶ 9496, at *p.* 68, 335. In the opinion of the court, the liquor license was "property" within the meaning of section 6321, subject to seizure and sale by the federal government, with the rights of the purchaser contingent upon his being approved by the

Board of Liquor License Commissioners and meeting any other requirements of Maryland law and regulations adopted pursuant thereto.

A liquor license was held to be "property" within the meaning of the Bankruptcy Act in *In re Quaker Room,* 90 *F. Supp.* 758 (*S. D. Cal.* 1950), despite judicial pronouncements to the contrary in cases decided in California state courts. Those cases were distinguished in *Golden v. State,* 133 *Cal. App. 2d* 640, 285 *P. 2d* 49 (*D. Ct. App.* 1955), and a liquor license was declared "property" within the meaning of section 6321, the court emphasizing its transferability and its substantial value. Accord, *Division of Labor Law Enforcement, Dept. of Industrial Relations, State of Cal. v. United States,* 301 *F. 2d* 82 (*9 Cir.* 1962).

We agree with the sound reasoning of the above cases, and in light of the property characteristics incident to the legal interest created by our statute, we conclude that the liquor license in New Jersey constitutes "property" within the meaning and for the purposes of section 6321. Thus, as far as the federal government is concerned, *N. J. S. A.* 33:1-26 cannot immunize liquor licenses from the attachment of federal liens, for, as stated in *United States v. Bess, supra,* 357 *U. S.,* at *p.* 57, 78 *S. Ct.,* at *p.* 1058, 2 *L. Ed. 2d,* at *p.* 1141, "state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States."

Our decision is also consistent with the suggestion of Judge Francis that "the public interest requires liberal interpretation and application of the lien statute [section 6321] because such money is the life blood of government," *Tanenbaum Textile Co. v. Vogue Foundations, Inc.,* 36 *N. J. Super.* 572, 581 (*App. Div.* 1955), and in no way marks a departure from the principles which have guided our courts in liquor license litigation. See *Blanck, supra,* 38 *N. J.,* at *pp.* 490–492. The liquor license, although transferable, is still to be considered a temporary permit or privilege, and not property, as it always has been, even before our Legislature so declared by statute, *Voight v. Board of Excise Comm'rs,* 59 *N. J. L.*

358, 360–361 (*Sup. Ct.* 1896), and this consideration is to continue to govern the relationship between state and local government and the licensee. Likewise, the vitality of *N. J. S. A.* 33 :1–26 is in no way diminished and will continue to protect the liquor license from any device which would subject it to the control of persons other than the licensee, *Mannion v. Greenbrook Hotel, Inc.,* 138 *N. J. Eq.* 518, 520 (*E. & A.* 1946) ; *Rawlins v. Trevethan,* 139 *N. J. Eq.* 226, 230 (*Ch.* 1947) ; *Walsh v. Bradley,* 121 *N. J. Eq.* 359, 360 (*Ch.* 1937), be it by pledge, lien, levy, attachment, execution, seizure for debts or the like. And finally, the sound discretion of the issuing authority to issue, renew or transfer liquor licenses will not be disturbed, for the seizure by the federal government merely obviates the necessity of securing the consent of the licensee to the transfer; Boss, as transferee, must still make application to the issuing authority as is required in the case of an original application for a license, *N. J. S. A.* 33 :1–26, and must measure up to the qualifications required of licensees as set out in *N. J. S. A.* 33 :1–25. See *Deitsch, supra.*

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.