### In re MAIN STREET BEVERAGE CORPORATION, et al., Debtor.

Civ.A. No. 97–6123(JBS).
Bankruptcy Nos. 94–13991
JHW, 94–10204 JHW.

United States District Court,
D. New Jersey.

Sept. 28, 1998.

Roy E. Scheider, Chester, New Jersey, Jeremy Galton, Frizell, Clarkson & Jaffe,

Metuchen, New Jersey, for Chrysler Capital Corporation.

Faith S. Hochberg, United States Attorney, Loretta C. Argrett, Assistant Attorney General, By: Samuel A. Mitchell, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C., for Internal Revenue Service.

## *OPINION*

SIMANDLE, District Judge.

This matter is before the court on the appeal by Chrysler Capital Corporation ("Chrysler") of the November 21, 1997 Order for Distribution of Sales Proceeds of Debtor's Liquor License of the United States Bankruptcy Court, which provides that the proceeds from the sale of the debtor's New Jersey liquor license, less certain necessary and reasonable sales expenses, shall be distributed to the Internal Revenue Service ("IRS") because the IRS's valid and subsisting federal tax lien has priority over Chrysler's competing lien interest. Chrysler contends that, having found that Chrysler had a valid and perfected security interest in the right to receive payment from the proceeds from the sale of the debtor's liquor license, the bankruptcy court should have applied the "First in Time, First in Right" principle and determined that Chrysler's security interest had priority over the IRS's later-filed federal tax lien. For the following reasons, the court rejects Chrysler's argument and affirms the bankruptcy court's November 21, 1997 Order.

## *FACTUAL BACKGROUND*

The parties to this appeal do not dispute the underlying facts. In January 1990, Chrysler loaned $1,000,000 to debtor, Main Street Beverage Corporation ("Main Street"). In December 1990, Chrysler loaned Main Street an additional $1,608,-000. As security for these loans, Main Street granted Chrysler a first priority security interest in all of its present and after-acquired furniture, equipment and fixtures and proceeds thereof.

On June 21, 1991, as further security for the prompt payment and performance of its existing and future liabilities and obligations to Chrysler, Main Street granted Chrysler an additional first priority security interest in its right to payment of "[a]ll proceeds arising from the sale or other disposition of [Main Street's] interest in that certain Plenary Retail Consumption License.... issued by or through Voorhees Township to [Main Street] ..." (Chrysler App. at Exhibit A.) Chrysler filed UCC Financing Statements with the Secretary of State of New Jersey on November 27, 1990 and August 31, 1991 and with the Clerk of Camden County on November 27, 1990.

On September 7, 1993, the IRS filed a Notice of Federal Tax Lien with respect to Main Street's unpaid payroll tax liabilities for the quarters ending June 30, 1992 and March 31, 1993. On October 5, 1993, the IRS filed an additional Notice of Federal Tax Lien with respect to Main Street's unpaid payroll tax liabilities for the quarter ending June 30, 1993. There is no dispute that the amount of the federal tax liens exceeds the value of the liquor license proceeds at issue in this case.

On January 19, 1994, Main Street filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Chrysler filed a secured proof of claim on June 4, 1994. On March 29, 1995, Main Street's Second Amended Joint Plan of Reorganization ("the Plan") was confirmed. The Plan reflected that Main Street owed Chrysler $924,389.32. Chrysler filed continuation statements with the Secretary of State on December 6, 1994 and August 1, 1995 and with the Clerk of Camden County on November 18, 1994 and September 6, 1995.

Main Street eventually defaulted under the Plan. On April 30, 1997, the bankruptcy court ordered that Main Street's liquor license be sold at a public auction, with the preservation of existing liens. On May 27, 1997, Progress Bank purchased the liquor

license at a public auction conducted by the bankruptcy court for the minimum bid of $200,000. The bankruptcy court confirmed the sale on June 25, 1997.

On July 14, 1997, the bankruptcy court conducted a hearing with regard to the distribution of the proceeds of the sale of Main Street's liquor license. On July 31, 1997, the bankruptcy court entered two orders, each of which provided: (1) that the right to receive payment from the proceeds of a municipal authorized sale of a liquor license is a general intangible under the Uniform Commercial Code, as adopted in New Jersey; (2) that Chrysler has a valid security interest in the proceeds received from the sale of Main Street's liquor license that was perfected as of June 23, 1996 and that was not prohibited by N.J.S.A. 33:1–26; (3) that Chrysler has a valid lien in the general intangible and in the proceeds of the sale of Main Street's liquor license; (4) that the IRS had a duly perfected and filed federal tax lien on Main Street's liquor license; and (5) that the IRS's federal tax lien is entitled to priority over Chrysler's security interest. Accordingly, the bankruptcy court ordered that the remainder of the proceeds of the sale of Main Street's liquor license after deduction of certain necessary and reasonable costs be distributed to the IRS.

On August 6, 1997, Chrysler filed a Notice of Appeal of the July 31, 1997 Orders. That same day, Chrysler also moved before the bankruptcy court for an order staying distribution of the proceeds from the sale of Main Street's liquor license, as directed by the July 31, 1997 Orders.

On August 8, 1997, during a telephone conference call regarding Chrysler's motion to stay the July 31, 1997 Orders, Chrysler persuaded the bankruptcy court to reconsider that portion of the July 31, 1997 Orders regarding the extent, validity and priority of the federal tax lien held by the IRS. The bankruptcy court entered an order to that effect on August 22, 1997, but the IRS objected to the form of the Order. After conducting a telephone conference call on September 25, 1997 regarding the IRS's objection to the form of the August 22, 1997 Order, the bankruptcy court issued another Order on October 8, 1997 clarifying the issues it intended to reconsider.

On October 21, 1997, the bankruptcy court heard oral argument in connection with its reconsideration of that portion of the July 31, 1997 Orders regarding the extent and priority of the federal tax lien held by the IRS and essentially decided to reaffirm the July 31, 1997 Orders.

On November 21, 1997, the bankruptcy court entered an Order for Distribution of Sales Proceeds of Debtor's Liquor License providing for distribution of the proceeds of the sale of Main Street's liquor license to the IRS after deduction of certain necessary and reasonable expenses.

Chrysler filed its Notice of Appeal of the November 21, 1997 Order on November 28, 1997. By Order dated December 8, 1997, the bankruptcy court stayed distribution in accordance with the November 21, 1997 Order pending the outcome of this appeal.

## DISCUSSION

This court has jurisdiction over Chrysler's appeal of a final order of the bankruptcy court under 28 U.S.C. § 158(a)(1). On appeal, a district court applies a clearly erroneous standard to the bankruptcy court's findings of fact, conducts plenary review of the bankruptcy court's conclusions of law, and reduces mixed questions of law and fact into their component parts, applying the appropriate standard to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992).

This appeal arises from the seeming inconsistency of the bankruptcy court's decision that the IRS's federal tax lien on Main Street's liquor license is entitled to priority over Chrysler's security interest in the right to payment from the proceeds of

the sale of Main Street's liquor license, which the bankruptcy court found Chrysler had perfected more than two years before the IRS filed notice of its federal tax lien.

■ "Federal tax liens do not automatically have priority over all other liens." *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). "Absent provision to the contrary, priority for purposes of federal law is governed by the common law principle that 'the first in time is the first in right.'" *Id.* (quoting *United States v. New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). Under 26 U.S.C. § 6323(a), a federal tax lien is not valid against any holder of a security interest until notice of the tax lien has been filed. Thus, Chrysler contends that, having found that Chrysler had a valid and perfected security interest in the right to receive payment from the proceeds from the sale of Main Street's liquor license, the bankruptcy court should have applied the "First in Time, First in Right" principle and determined that Chrysler's security interest had priority over the IRS's later-filed federal tax liens.

The IRS defends the correctness of the bankruptcy court's distribution order by challenging the bankruptcy court's conclusion that Chrysler had a valid and perfected security interest in the right to receive payment from the proceeds of the sale of Main Street's liquor license. The IRS maintains that the "First in Time, First in Right" principle never comes into play in this case because its federal tax lien is the only valid lien in existence.

■ As an initial matter, therefore, this court must address Chrysler's contention that the IRS waived its right to challenge the correctness of the bankruptcy court's conclusion that Chrysler had a valid and perfected security interest in the right to receive payment from the proceeds of the sale of the liquor license by not filing a cross-appeal.

■ It is well-settled that "[an] appellee may, without taking a cross-appeal, urge in support of any decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *Dalle Tezze v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor,* 814 F.2d 129, 132 (3d Cir.1987) (quoting *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924)). The justification for this principle, which has come to be known as the "inveterate and certain" rule, is that "a party who is happy with the judgment of a court should not have to appeal from it." *Id.* at 132–33. "In fact, a party has no right to appeal from a favorable judgment." *Id.* (citing *Public Serv. Comm'n v. Brashear Freight Lines, Inc.,* 306 U.S. 204, 59 S.Ct. 480, 83 L.Ed. 608 (1939)).

In light of this authority, there is no merit to Chrysler's contention that the IRS has waived its right to challenge the bankruptcy court's conclusion that Chrysler had a valid and perfected security interest in the right to receive payment from the proceeds of the sale of the liquor license by failing to file a cross-appeal. The decree at issue on this appeal is the bankruptcy court's November 21, 1997 Order for Distribution of Sales Proceeds of Debtor's Liquor License, which provides that the proceeds from the sale of Main Street's liquor license, less certain necessary and reasonable sales expenses, shall be distributed to the IRS because the IRS's valid and subsisting federal tax lien has priority over Chrysler's competing lien interest. The IRS had no right to appeal that judgment because it is favorable to the IRS.

Moreover, under the inveterate and certain rule, the IRS had no obligation to cross-appeal in order to preserve its right to challenge the bankruptcy court's conclusion that Chrysler has a valid and perfected security interest in the right to receive

payment from the proceeds of the sale of Main Street's liquor license in this court on Chrysler's appeal of the November 21, 1997 Order. The IRS's opposition to that conclusion of the bankruptcy court is a matter of record below. Indeed, the bankruptcy court expressly noted during the October 27, 1997 oral argument regarding its reconsideration of the July 31, 1997 Orders that the IRS had not waived its right to attack the bankruptcy court's conclusion about the validity of Chrysler's security interest. (*See* Transcript of the October 21, 1997 Oral Argument ("Tr.") at 2:13–4:15.) The bankruptcy court then proceeded to hear argument from the IRS on that point. (*See* Tr. at 10:1–15:21.) Under these circumstances, the IRS is not precluded from challenging the bankruptcy court's conclusion in this court on Chrysler's appeal.

Having determined that the IRS may challenge the bankruptcy court's underlying conclusion that Chrysler has a valid and perfected security interest in the right to receive payment from the proceeds of the sale of Main Street's liquor license, the court turns to the merits of that conclusion.

■ The IRS's lien arises under 26 U.S.C. § 6321, which grants the IRS a tax lien "upon all property and rights to property" of any person who neglects or refuses to pay a federal tax liability after demand. The lien attaches to all property of the taxpayer and continues to attach to all after-acquired property until the assessments are satisfied in full. *Glass City Bank v. United States,* 326 U.S. 265, 267–68, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354, 356 (3d Cir. 1986). Because § 6321 "is so broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have," *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 720–21, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), it has been held that a lien under § 6321 reaches even property of the tax-

payer such as a liquor license that is otherwise subject to state anti-alienation provisions. *21 West Lancaster,* 790 F.2d at 358; *In re Tabone, Inc.,* 175 B.R. 855, 860–61 (Bankr.D.N.J.1994). Thus, "[i]t is well settled that federal tax liens reach interests immune from attachment by private creditors." *In re Atlantic Bus. & Community Dev. Corp.,* 994 F.2d 1069, 1072 (3d Cir. 1993). The court, therefore, must examine the nature of the property interest inherent in a New Jersey liquor license under the scheme established by the state legislature.

■ In *Boss Co., Inc. v. Board of Comm'rs of Atlantic City,* 40 N.J. 379, 387, 192 A.2d 584 (1963), the New Jersey Supreme Court held that a New Jersey liquor license is "property" within the meaning and for the purposes of § 6321. The court found that a liquor license "has value—not merely the personal value to the licensee that inheres in the right to engage in the business of selling intoxicating liquors, but also the monetary value that arises from the power possessed by the licensee to substitute, with the municipal consent, some other person in his place as licensee." *Id.* at 384, 192 A.2d 584. Thus, the court concluded that a liquor license "is a legal interest in the nature of an economic asset, created and protected by statute, and because it has monetary value and is transferable, either by consent of the licensee or by operation of law ... it possesses the qualities of property," for purposes of the federal tax lien statute. *Id.* at 385, 192 A.2d 584.

■ The court also made clear, however, that a liquor license is not "property" under New Jersey law. "A liquor license in New Jersey vests a personal right in the licensee to conduct a business otherwise illegal. As such, it is merely a temporary permit or privilege." *Id.* at 384, 192 A.2d 584. This non-property status of a liquor license is reflected in the statute that governs the transfer of liquor licenses, which provides, in pertinent part:

Under no circumstances ... shall a [liquor] license, *or rights thereunder,* be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except for payment of taxes, fees, interest and penalties imposed by any State tax law for which a lien may attach pursuant to R.S. 54:49–1 or pursuant to the State Tax Uniform Procedure Law, R.S. 54:48–1 et seq., or any similar State lien of tax, except to the extent expressly provides by this chapter.

N.J.S.A. 33:1–26 (emphasis added).

▉ Chrysler concedes that, in light of N.J.S.A. 33:1–26, it *could not have taken a* valid security interest in Main Street's liquor license itself. The issue in dispute is whether the bankruptcy court correctly determined that Main Street's right to receive payment from the proceeds of the sale of its liquor license does not arise *under* the liquor license, within the meaning of the term "rights thereunder" as used in N.J.S.A. 33:1–26, such that Chrysler could take a valid security interest in that right.

Chrysler argues that the bankruptcy court correctly determined that Main Street's right to receive payment from the proceeds of the sale of its liquor license is a "general intangible" under the Uniform Commercial Code, *separate and distinct* from the license itself, and that N.J.S.A. 33:1–26 does not prohibit Chrysler from taking a valid security interest in that right.

Chrysler's argument is premised on the New Jersey Supreme Court's recognition in *Boss* that a liquor license has economic value and that the purpose of N.J.S.A. 33:1–26 is "to protect the license from any device which would subject it to control of persons other than the licensee." *Boss,* 40 N.J. at 384–85, 388, 192 A.2d 584. Chrysler claims that the legislative history of N.J.S.A. 33:1–26 reveals no legislative intent to preclude a licensee from utilizing the economic value of his liquor license in a manner that would not interfere with the local liquor control board's unfettered control of the license, such as by granting a security interest in his right to receive payment from the proceeds of an approved sale of the liquor license. Chrysler asserts that, because the licensee acquires the right to receive the proceeds of any sale of his liquor license when he acquires the license, the licensee can grant a valid security interest in that right to a holder who can its security interest in that right even though the eventual sale of the license remains a mere contingency. The IRS argues, on the other hand, that Chrysler's interest should be determined as of the time prior to sale, when the license was still in Main Street's hands, and that at that time the only creditor that could have had a perfected lien in the license itself was the IRS, and not a private creditor such as Chrysler, due to N.J.S.A. 33:1–26.

The Third Circuit rejected an argument very similar to Chrysler's in *21 West Lancaster, supra,* a case involving a priority dispute between a federal tax lien and a purported security interest in a Pennsylvania liquor license. The defendant licensee granted a security interest in its liquor license to a creditor. *21 West Lancaster,* 790 F.2d at 355. Thereafter, the IRS filed a federal tax lien on the liquor license. *Id.* Ultimately, a federal district court was called upon to resolve the competing claims to the proceeds of the sale of liquor license. *Id.* at 355–56. The district court acknowledged that Pennsylvania law prohibited security interests in liquor licenses, but determined that a licensee could grant a security interest in the economic value the license conferred on his business, which the court referred to as the "value enhancement component" of the license. *Id.* at 356. Accordingly, the district court held that the security interest granted by the licensee was entitled to priority over the later filed federal tax lien. *Id.*

The Third Circuit reversed, noting that the outcome reached by the district court "would seem to contradict the unambigu-

ous import of the Pennsylvania authority defining the *nature* of a liquor license, a question of state law." *Id.* at 359 (emphasis in original). The court characterized the distinction between the license and its value enhancement component as "a highly metaphysical one," noting that there was no support in Pennsylvania law for "the proposition that there exists a value enhancement component to a liquor license separable from the license itself." *Id.* The court expressed some dissatisfaction with the holding it felt constrained to reach, acknowledging that the result was especially harsh for the creditor, but remarked that "the ability to alter such a result rests with the Pennsylvania legislature, which may choose to redefine the nature of a liquor license under state law." *Id.*

Guided by the Third Circuit's decision in *21 West Lancaster*, this court rejects Chrysler's argument in support of the bankruptcy court's conclusion that Main Street's right to receive payment from the proceeds of the sale of its liquor license does not arise under the license, within the meaning of the term "rights hereunder" as used in N.J.S.A. 33:1–26. To do otherwise "would seem to contradict the unambiguous import of the [New Jersey] authority defining the nature of a liquor license, a matter of state law."

As in *21 West Lancaster*, the distinction Chrysler urges upon the court is "a highly metaphysical one," and the New Jersey authorities cited by Chrysler provide no support for the proposition that the right to receive payment from the proceeds of the sale of a liquor license is separable from the license itself.[1] *Boss* stands for the proposition that a liquor license has economic value, but it provides no support for Chrysler's contention that a licensee can grant a security interest in that economic value without running afoul of

N.J.S.A. 33:1–26. Furthermore, the absence of any express prohibition on the granting of a security interest in a licensee's right to receive payment from the proceeds of the sale of his liquor license in the legislative history of N.J.S.A. 33:1–26 does not constitute support for the proposition that a licensee can grant such a security interest. Under these circumstances, this federal court is unwilling to interpret N.J.S.A. 33:1–26—a statute defining the nature of a license created under state law—in the manner Chrysler advocates.

This is not to say that Chrysler's theory is without merit as a matter of commercial law. Perhaps a licensee should be able to utilize the economic value of his liquor license in some fashion that does not interfere with the local liquor control board's unfettered control over the license. As the Third Circuit observed in *21 West Lancaster*, however, that is a matter for the state legislature, which may choose to redefine the nature of a liquor license under state law. Interestingly, that is exactly what happened in Pennsylvania the year after the Third Circuit decided *21 West Lancaster*, when the Pennsylvania legislature amended the statute defining the nature of a liquor license so as to permit licensees to grant security interests in them. *See In re Walkers Mill Inn, Inc.*, 117 B.R. 197, 199 (Bankr.W.D.Pa.1990) (discussing July 1, 1987 amendment of 47 Pa.Cons.Stat. Ann. § 4–468(d)). Until such time as the New Jersey legislature follows suit, this court must decline Chrysler's invitation to recognize a new exception to N.J.S.A. 33:1–26.

Accordingly, this court holds that Chrysler has no valid security interest in the right to receive payment of the proceeds of the sale of Main Street's liquor license, and that the bankruptcy court's conclusion to the contrary was erroneous.[2] There being

---

1. The court finds the cases involving Federal Communications Commission ("FCC") broadcasting licenses cited by Chrysler to be inapposite because the statute at issue in this case

is a New Jersey statute defining the nature of a license created under New Jersey law.

2. In light of this holding, the court need not address the IRS's argument that its federal

no other lien on the proceeds of the sale of Main Street's liquor license other than the IRS's valid and subsisting federal tax lien, this court affirms the bankruptcy court's November 21, 1997 Order for Distribution of Sales Proceeds of Debtor's Liquor License, providing that the proceeds from the sale of Main Street's liquor license, less certain necessary and reasonable sales expenses, be distributed to the IRS.

### CONCLUSION

For these reasons, the court affirms the bankruptcy court's November 21, 1997 Order for Distribution of Sales Proceeds of Debtor's Liquor License, providing that the proceeds from the sale of Main Street's liquor license, less certain necessary and reasonable sales expenses, be distributed to the IRS. The accompanying Order is entered.

tax lien is entitled to priority over whatever interest Chrysler may have had.