**In re CHRIS–DON, INC., Debtor.**

**Daniel Straffi, Trustee, Plaintiff,**

v.

**State of New Jersey, et al., Defendants.**

**Bankruptcy No. 01–56546 (RTL).**
**Adversary No. 03–1815 (RTL).**

United States Bankruptcy Court,
D. New Jersey.

April 30, 2004.

Daniel Straffi, Toms River, NJ, Chapter 7 Trustee.

Anthony Tancini, Deputy Attorney General, Trenton, NJ, for the State of New Jersey, Division of Taxation, Department of Labor.

Jay Samuels, Wendels, Marx, Lane & Mittendorf, LLP, Princeton, NJ, for United Trust Bank.

### *OPINION*

RAYMOND T. LYONS, Bankruptcy Judge.

Presented for the court's determination are cross motions for summary judgment regarding the extent, validity and priority of liens attaching to the proceeds from the sale of the debtor's liquor license. The trustee sold the liquor license for a purchase price of $ 155,000. Three parties asserted liens on the sale proceeds, United Trust Bank [UTB], the State of New Jersey Division of Taxation and the State of New Jersey Department of Labor.[1] Historically, a secured creditor could not obtain a lien on a liquor license; however, Revised Article 9 of the Uniform Commercial Code [2] overrides restrictions on pledging collateral. Consistent with the provisions of Revised Article 9, the court finds that United Trust Bank has a valid first priority lien. Accordingly, United Trust Bank is entitled to receive the proceeds from the sale of the debtor's liquor license.

### *JURISDICTION*

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey dated July 23, 1984. The issues presented are core proceedings concerning the allowance of claims against the estate and the determination of the validity and priority of liens against property of the estate. 28 U.S.C. § 157(b)(2)(B) and (K).

### *FACTS*

The corporate debtor, Chris–Don, Inc. filed a voluntary chapter 11 petition on May 29, 2001. The debtor operated a bar, Roccos Tavern, located in Fanwood, New Jersey. The chapter 11 case was converted to chapter 7 on motion by the United States Trustee. After conversion, Mr. Straffi was appointed the chapter 7 trustee.

One of the debtor's assets was a liquor license issued by the Borough of Fanwood. Mr. Straffi sold the debtor's liquor license for a purchase price of $155,000. The sale

**1.** PNC Bank initially asserted a lien on the sale proceeds, and was a defendant in the trustee's adversary proceeding. The trustee's motion for summary judgment was granted

against PNC Bank on 2/19/2004, therefore, PNC is no longer a party to this action.

**2.** Under N.J.S.A. 12A:9–101, et seq., Article 9 is titled Chapter 9.

was approved "free and clear of liens, claims or encumbrances ... with any liens, claims or encumbrances when proven to attach to the proceeds of sale." The sale was consummated and the trustee held the sale proceeds pending a determination of the validity of liens attaching to the proceeds.

Mr. Straffi filed an adversary complaint seeking a determination of the extent, validity and priority of the liens attaching to the proceeds from the sale of the liquor license. Three parties asserted liens to the proceeds, United Trust Bank, the State of New Jersey Division of Taxation and the State of New Jersey Department of Labor.

United Trust Bank's lien stems from a $300,000 loan made to Chris–Don on December 8, 1995. As collateral for the loan, the debtor granted UTB a security interest in the debtor's business assets, including the general intangibles. UTB perfected its security interest by filing a UCC–1 financing statement on December 27, 1995. The bank asserts that as of December 5, 2003, there remains due $278,830.81 in principal and $83,707.63 in interest.

The State of New Jersey Division of Taxation obtained a judgment against the debtor in the amount of $33,980.55. The State filed a Certificate of Debt, evidencing this claim on April 17, 1997. New Jersey's Department of Labor obtained a judgment against the debtor in the amount of $6,972.65. This judgment was docketed on January 1, 2001.

The Trustee, UTB and the State filed cross motions for summary judgment. UTB argues that it has a first priority security interest in the proceeds, and it is entitled to the sale funds. The State asserts that its liens are the only valid liens, since state law precludes a licensee from granting a consensual security interest in a liquor license to a third party. The trustee agrees with the state's legal conclusions.

## DISCUSSION

This dispute stems from the parties' interest in the proceeds from the sale of the debtor's liquor license. To reach a determination, the court must decide two issues:

1) do the revisions to the Uniform Commercial Code negate the anti-alienation provisions of New Jersey's Alcoholic Beverage Control statutes? and,

2) does UTB have a security interest in the debtor's liquor license, as a general intangible, and if so, does that lien attach to the postpetition proceeds from the sale of the license?

This matter is ripe for summary judgment since no factual issues are in dispute, and the issues to be determined are legal. Fed. R. Bankr.P. 7056.

**I. Do the 2001 revisions, to Article 9 of the Uniform Commercial Code negate the anti-alienation provisions of New Jersey's Alcoholic Beverage Control Statute?**

*New Jersey's Alcoholic Beverage Control Statute*

Enacted in 1933, New Jersey's Alcoholic Beverage Control statute precludes a licensee from utilizing a liquor license as collateral for a loan. The statute, N.J.S.A. 33:1–26 provides;

Under no circumstances, however, shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or deposition, whatsoever, except for payment of taxes, fees, interest and penalties imposed by any State tax law for which a lien may attach....

N.J.S.A. 33:1–26. Courts interpreting the statute recognized that a liquor license was "a privilege, not a right," and was analogous to a temporary permit. *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 N.J. 373, 381, 120 A.2d 24 (1956).

The rationale behind the anti-alienation provisions of the statute was to maintain the state's regulatory authority in issuing and monitoring liquor licenses. For example, if a licensee were capable of obtaining loans by using the license as collateral, then a lender may have a superior interest in the license over the state and arguably a state's authority to reissue and approve or deny transfers of a liquor license may be subjected to the control of the lender. The legislature sought to prevent such a result through passage of N.J.S.A. 33:1–26.

Since the statute's enactment seventy-one years ago, courts have found a liquor license to be property for certain purposes not mentioned in N.J.S.A. 33:1–26, without infringing on the state's regulatory authority. For example, a liquor license was property within the meaning of the Internal Revenue Code, and federal tax liens attached to liquor licenses. *The Boss Co. v. Bd. of Comm.'s of Atlantic City,* 40 N.J. 379, 387–8, 192 A.2d 584 (1963). Additionally, a licensee possessed property rights in a liquor license, entitling the licensee to the due process protections of the Fourteenth Amendment. *Sea Girt Rest. & Tavern Owners Ass'n v. Borough of Sea Girt,* 625 F.Supp. 1482, 1487 (D.N.J.1986).

Applying an analogous Pennsylvania statute, the Third Circuit held that a licensee could not grant a security interest to a private third party in exchange for obtaining credit. In *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* the Third Circuit held that pursuant to Pennsylvania's Liquor Code, "a liquor license is not property but a privilege ... a liquor license may not be collateral, and a creditor therefore may not hold a valid security interest in it." *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354, 358 (3d Cir.1986). There, the Third Circuit addressed the competing rights of a private creditor and the IRS in a liquor license, and found that the private creditor could not have a valid lien on the liquor license under the state statute, which provided, "[t]he license shall continue as a personal privilege granted by the board and nothing therein shall constitute the license as property." 47 P.S. § 4–468(b.1). The court concluded the opinion with the following;

> To be sure, the result we reach in this case is not an altogether satisfactory one either. It leads to an anomalous conclusion that although a liquor license is not property for the purposes of a security interest under Pennsylvania law, it is property for the purposes of a federal tax lien.

> Of greater concern to the parties, our analysis means that the assignee of a creditor who has taken what were reasonably believed to be the steps necessary to perfect its interest in the license as security will nonetheless be defeated by a subsequent tax claim.

> This would seem to be harsh treatment of the creditor. As the situation now stands, however, the ability to alter such a result rests with the Pennsylvania legislature, which may choose to redefine the nature of a liquor license under state law.

*21 West Lancaster,* 790 F.2d at 359. Subsequent to the issuance of the opinion in *21 West Lancaster,* the Pennsylvania legislature amended the Pennsylvania Liquor Code to provide, "[t]he license shall constitute a privilege between the board and the licensee. As between the licensee and

third parties, the license shall constitute property." 47 P.S. § 4.468(d)(1987).[3]

In 1998, relying on the Third Circuit's *21 West Lancaster* decision, Judge Simandle held that pursuant to New Jersey law, a private creditor could not have a valid security interest in a debtor's liquor license. *In re Main Street Beverage Corp.*, 232 B.R. 303 (D.N.J.1998). The parties in *Main Street* conceded that pursuant to N.J.S.A. 33:1–26 the creditor "could not have taken a valid security interest in the liquor license itself," rather the creditor argued that it could hold a security interest in the proceeds of the liquor license in the event that the license were sold. *Id.* at 309. In support of its argument, the creditor asserted that the liquor license had economic value, that was an asset in itself which could be the subject of a lien. Judge Simandle analyzed the statutory scheme and rejected the creditor's argument, stating;

> [t]his is not to say that [the creditor's] theory is without merit as a matter of commercial law. Perhaps a licensee should be able to utilize the economic value of its liquor license in some fashion that does not interfere with the local liquor control board's unfettered control over the license.
>
> As the Third Circuit observed in *21 West Lancaster*, however, that is a matter for the state legislature, which may choose to redefine the nature of a liquor license under state law. Interestingly, that is exactly what happened in Pennsylvania the year after the Circuit decided *21 West Lancaster*, when the Pennsylvania legislature amended the statute defining the nature of a liquor license so as to permit licensees to grant security interest in them. . . .

Until such time as the New Jersey legislature follows suit, this court must decline [the creditor's] invitation to recognize a new exception to N.J.S.A. 33:1–26.

*In re Main Street Beverage*, 232 B.R. at 310.

Unlike Pennsylvania, New Jersey did not amend its Alcoholic Beverage Control Statute; it did, however, amend its commercial code.

*Revisions to Article 9 of the Uniform Commercial Code*

In 2001, the New Jersey legislature enacted revised Article 9 to the Uniform Commercial Code. The sponsor statements to the bill explain that the revisions were enacted to include additional collateral, thereby increasing a debtor's options in procuring loans.

> The scope of revised Chapter 9 is expanded to include collateral that the former Chapter 9 did not cover or treated in a restricted manner. . . . Broadening the scope of collateral increases a debtor's access to credit.

Senate Bill No.1382, 209th Leg. (N.J.2001)(statement of the Assembly Banking and Insurance Committee). To achieve this goal, the amended commercial code renders ineffective statutes that restrict assignment. N.J.S.A. 12A:9–408(c) provides, in relevant part;

> Restrictions on assignments of . . . certain general intangibles ineffective
>
> c. Legal restrictions on assignment generally ineffective. Except as provided in subsection e of this section, *a* rule of law, *statute,* or regulation *that prohibits, restricts,* or requires the consent of a government, governmental body or official, person obligated on a promissory note, or account debtor to *the* assignment or transfer of, or *creation of a*

---

**3.** For a more detailed explanation of the Pennsylvania Liquor Code see *In re Walkers*

*Mill Inn Inc.,* 117 B.R. 197 (Bankr.W.D.Pa. 1990).

*security interest in,* a promissory note, health-care-insurance receivable, or *general intangible,* including a contract, permit, license or franchise between an account debtor and a debtor, *is ineffective to the extent that the* rule of law, *statute,* or regulation:

■ *would impair the creation, attachment or perfection of a security interest*

. . .

N.J.S.A. 12A:9–408(c)(emphasis added).

UTB argues that N.J.S.A. 12A: 9–408 overrides the provisions of N.J.S.A. 33:1–26 that restrict the granting of security interests in liquor licenses. The State argues that N.J.S.A. 33:1–26 is the controlling statute because it specifically addresses liquor licenses, whereas 12A:9–408 speaks to assignments generally, and where two statutes conflict, the more specific governs the general.

■ Regarding the law of statutory construction, the State is correct that where two statutes are in conflict, a statute addressing a specific legal precept supercedes a statute governing general provisions. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In the instant case, however, the two statutes are not in conflict, due to the enactment of N.J.S.A. 12A:9–408(e), which provides, in relevant part,

e. Section prevails over specified inconsistent law. This section prevails over any inconsistent provisions of State statutes, rules, and regulations, other than R.S. 34:15–29 and section 13 of P.L.1970, c. 13(c). (5:9–13).

■ The trustee asserts that the revisions do not supercede N.J.S.A. 33:1–26, because this would require the court to concluded that the legislature intended to repeal the Alcoholic Beverage statutes,

and implied repealers are not favored in the law. The trustee is correct in asserting the general proposition that implied repealers are not favored, however, the legislature's repeal of the anti-alienation provisions is not implied, it is specific.

By adopting subsection (e), the state legislature provided that the revised commercial code would override inconsistent state law with two exceptions. The legislature specifically excluded statutes addressing structured settlements (section 13 of P.L.1970), and workers' compensation agreements (R.S. 34:15–29). If the legislature intended to exclude the Alcoholic Beverage statutes, N.J.S.A. 33:1–26, from the revisions, then it would have done so. The court need not find that the legislature repealed 33:1–26 by implication, because 9–408(e) is a specific override whose only exclusions are structured settlements and workers compensation agreements. The plain language of the statute provides that the anti-alienation provisions of N.J.S.A. 33:1–26 are overridden by N.J.S.A. 12A:9–408.

Additionally, the comments to the revisions demonstrate that the legislature enacted 9–408 to provide debtors more options in using licenses as collateral for loans.

7. **Effect in Assignor's Bankruptcy.** This section could have a substantial effect if the assignor enters bankruptcy. Roughly speaking, Bankruptcy Code Section 552 invalidates security interests in property acquired after a bankruptcy petition is filed, except to the extent that the postpetition property constitutes proceeds of prepetition collateral.[4]

N.J.S.A. 12A:9–408 cmt. 7 (2001).

8. **Effect Outside of Bankruptcy.** The principal effects of this section will

---

4. **Example 4.** A debtor is the owner of a cable television franchise that, under applicable

take place outside of bankruptcy. Compared to the relatively few debtors that enter bankruptcy, there are many more that do not. By making available previously unavailable property as collateral, this section should enable debtors to obtain additional credit. For purposes of determining whether to extend credit, under some circumstances a secured party may ascribe value to the collateral to which its security has attached, even if this section precludes the secured party from enforcing the security interest without the agreement of the account debtor or person obligated on the promissory note. This may be the case where the secured party sees a likelihood of obtaining that agreement in the future. This may also be the case where the secured party anticipates that the collateral will give rise to a type of proceeds as to which this section would not apply.[5]

N.J.S.A. 12A:9–408 cmt. 8 (2001). The comments reflect the legislative intention that a business should be capable of obtaining loans by using all assets it has to secure the loan. *In re West 21 Lancaster*

*Corp.* (interpreting Pennsylvania law) and *In re Main Street Beverage Corp.* were decided before the 2001 UCC amendments became effective. The court agrees with UTB that the UCC amendments alter the outcome of the prior cases, and negate those provisions of N.J.S.A. 33:1–26 that restrict the assignment of a security interest in a liquor license.

This result will not interfere with the State's control over liquor licenses. UTB conceded at oral argument that it could not foreclose on the liquor license nor compel its sale. The bank's only remedy is to wait for a sale by the debtor, a receiver or a trustee then assert a lien on the proceeds of the sale. N.J.S.A. 12A:9–408(d) provides:

> *To the extent that a term in* a promissory note or in *an agreement* between an account debtor and a debtor *which relates to a* health-care-insurance receivable or *general intangible* or a rule of law, statute, or regulation described in subsection c. *would be effective under law other than in this chapter but is ineffective under subsection a. or c. of this section, the creation, attachment, or*

---

law, cannot be assigned without the consent of the municipal franchisor. A lender wishes to extend credit to the debtor, provided that the credit is secured by the debtor's "going business" value. To secure the loan, the debtor grants a security interest in all its existing and after acquired property. The franchise represents the principal value of the business. The municipality refuses to consent to any assignment for collateral purposes. *If other law were given effect, the security interest in the franchise would not attach;* and if the debtor were to enter bankruptcy and sell the business, the secured party would receive but a fraction of the business's value. *Under this section, however, the security interest would attach to the franchise. As a result, the security interest would attach to the proceeds of any sale of the franchise while the bankruptcy is pending.* However, this section would protect the interests of the municipality by preventing the secured party from enforcing its security

interest to the detriment of the municipality. N.J.S.A. 12A:9–408 cmt. 7 ex. 4 (2001)(emphasis added).

5. **Example 5.** Under the facts of Example 4, the debtor does not enter bankruptcy. Perhaps in exchange for a fee, the municipality agrees that the debtor may transfer the franchise to a buyer. As consideration for the transfer, the debtor receives from the buyer its check for part of the purchase price and its promissory note for the balance. The security interest attaches to the check and promissory note as proceeds. See Section 9–315(a)(2). This section does not apply to the security interest in the check, which is not a promissory note, health-care-insurance receivable, or general intangible. Nor does it apply to the security interest in the promissory note, inasmuch as it was not sold to the secured party. N.J.S.A. 12A:9–408 cmt. 8 ex. 5 (2001).

*perfection of a security interest in the* promissory note, health-care-insurance receivable, or *general intangible . . .*

(6) *does not entitle the secured party to enforce the security interest in the* promissory note, health-care-insurance receivable, or *general intangible.*

N.J.S.A. 12A:9–408(d)(6)(emphasis added).

Having found that the revisions to the commercial code override the anti-alienation provisions of the state's Alcoholic Beverage Control laws, the court turns to the question of whether or not UTB's security interest attaches to the proceeds of the liquor license.

## II. Does UTB have a security interest in the debtor's liquor license, and if so, does that lien attach to the post-petition proceeds from the sale of the license?

*Validity of UTB's security interest*

■ On December 8, 1995, Chris–Don borrowed $300,000 from United Trust Bank. In consideration for the loan, Chris–Don granted UTB a security interest in

All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith. All inventory, raw materials, work in process and supplies now owned or hereinafter acquired. All accounts receivable now outstanding or hereafter arising. All contract rights and general intangibles now in force or hereafter acquired.

UTB argues that its security interest extends to the debtor's liquor license, because a liquor license is a general intangible. The UCC defines general intangibles as;

any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter of credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.

N.J.S.A. 12A:9–102(42).

UTB argues that the liquor license is the debtor's personal property and therefore a general intangible subject to the Bank's lien. The State argues that a liquor license is not the property of the licensee in accordance with both statutory and case law, and it therefore is not a general intangible. N.J.S.A. 33:1–26 provides that, "[u]nder no circumstances . . . shall a license . . . be deemed property. . . ." This language was adopted to prevent the creation of security interests in liquor licenses. As discussed above, because this section of the statute prevents the assignment of a liquor license, it, too is superceded by N.J.S.A. 12A:9–408(c) and (e). Accordingly, the license is property of the debtor, and is a general intangible within the scope of the UCC.

Other courts have held that a liquor license is a general intangible. *In re O'Neill's Shannon Village,* 750 F.2d 679, 682–83 (8th Cir.1984), *In re Genuario,* 109 B.R. 550 (Bankr.D.R.I.1989). The court acknowledges that the courts holding that a liquor license is a general intangible did not have a state statute such as ours, stating that a license is not property. With the adoption of the revised UCC, however, the "not property" language of 33:1–26 is no longer applicable. Accordingly, the license is property and UTB's security interest in general intangibles includes a valid security interest in the license. *See also, The Boss Co., v. Bd. of Commissioners of Atlantic City,* 40 N.J.

379, 192 A.2d 584 (N.J.1963)(holding that regardless of the "not property" language of N.J.S.A. 33:1–26, a liquor license was property within the meaning of 26 U.S.C. § 6321, and federal tax liens could attach to a liquor license).

*11 U.S.C. § 552*

11 U.S.C. § 552(a) provides the general rule that "property acquired by the estate . . . after the commencement of the case is not subject to any lien" stemming from a prepetition security agreement. Section 552(b) provides an exception to this rule that allows prepetition liens to survive a bankruptcy filing where the prepetition lien attached to the proceeds from the sale of the collateral securing the lien. *See, In re Patio & Porch Systems, Inc.,* 194 B.R. 569 (Bankr.D.Md.1996).

■ The security agreement between Chris–Don and UTB provided that "[t]he Collateral in which this security agreement is granted is all of the Debtor's property described below . . . together with all the proceeds and products therefrom." Having found that UTB has a valid prepetition security interest in the debtor's liquor license, the court finds that the security interest extends to the proceeds from the sale of the liquor license, since the security agreement provided that the collateral securing the loan included the proceeds of the collateral. UTB's lien falls within the exception of § 552(b), and its prepetition lien extends to the funds collected postpetition from the sale of the debtor's license.

*Validity of tax liens*

The state taxing authorities need not rely on the revisions to the uniform commercial code to establish the validity of their liens, since their liens on the debtor's liquor license were not restricted under New Jersey law. N.J.S.A. 33:1–26 provides that state tax liens may attach to a liquor license.

### CONCLUSION

Based on the foregoing, UTB, the State of New Jersey, Division of Taxation, and the State of New Jersey, Department of Labor all assert valid liens on the sale proceeds from the debtor's liquor license. The parties conceded that if UTB has a valid security interest, its lien takes priority over the State's lien, since UTB's lien was first in time.[6] Since UTB's lien exceeds the purchase price of the liquor license, no funds remain, from the sale of the license, to satisfy the state's claims. In conclusion, the court finds;

1.) the revisions to the Uniform Commercial Code, adopted in 2001, override the anti-alienation provisions of N.J.S.A. 33:1–26, and

2.) UTB has a valid first priority perfected security interest in the proceeds from the sale of the debtor's liquor license.

Accordingly,

1.) the Trustee's motion for summary judgment against United Trust Bank is denied,

2.) United Trust Bank's motion for summary judgment is granted, and

3.) the State of New Jersey, Division of Taxation and Department of Labor's motion for summary judgment is denied.

---

**6.** The Uniform Commercial Code follows the first in time rule regarding the priority of liens. N.J.S.A. 12A:9–322. United Trust Bank filed its financing statement on December 27, 1995. The State's liens were docketed after UTB's on April 17, 1997 and January 1, 2001. Accordingly, the State's liens are junior to the lien of UTB.