UNITED STATES of America,

v.

Tarik I. ALSUGAIR.

Criminal Action No. 02–395.

United States District Court,
D. New Jersey.

April 8, 2003.

Paul J. Fishman, Esq., Karin McEwen, Esq., Ellen A. Harnick, Esq., Lee D. Sossen, Esq., Friedman Kaplan Seiler & Adelman LLP, Newark, NJ, Attorneys for Defendant, Tarik I. Alsugair.

Christopher J. Christie, Esq., United States Attorney, George S. Leone, Esq., Assistant United States Attorney, Amy S. Winkelman, Esq., Assistant United States Attorney, Office of the United States Attorney, District of New Jersey, Newark, NJ, Attorneys for the United States of America.

## OPINION

ORLOFSKY, District Judge.

This is the second time that Defendant Tarik I. Alsugair ("Alsugair") has moved to dismiss the criminal indictment brought against him. Alsugair had been previously

indicted for violating the federal mail-fraud statute, 18 U.S.C. § 1341 (2002), and this Court dismissed the original indictment for its failure to adequately allege one of the required elements of mail-fraud, the deprivation of property. *See United States v. Alkaabi,* 223 F.Supp.2d 583, 591 (D.N.J. 2002).

Once again, this Court is called upon to address the question of whether an alleged scheme to defraud the Educational Testing Service, Inc. ("ETS"), by using imposters to take the Test of English as a Foreign Language ("TOEFL") on behalf of other students, constitutes a deprivation of property within the meaning of the mail-fraud statute. For the reasons set forth below, I conclude that the superseding indictment adequately alleges that Alsugair obtained property from ETS. Accordingly, I shall deny Alsugair's motion to dismiss the superseding indictment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Test of English as a Foreign Language, commonly known as the TOEFL, is administered by ETS, a New Jersey corporation that designs and administers standardized exams.[1] *See* Alsugair Indictment ("Indict.") ¶ 1(A). Many schools and colleges throughout the United States require foreign students to pass the TOEFL examination as a condition of admission to their academic programs. *Id.* Moreover, pursuant to federal regulations, a foreign student has to be a full-time student enrolled at a federally approved school, college, or university in order to obtain a student visa and, thus, to legally reside in the United States to pursue a course of study. *Id.* ¶ 1(c).

The superseding indictment, filed on October 12, 2002, charges Alsugair with conspiracy to violate the federal mail-fraud statute, in violation of 18 U.S.C. § 371, and with the substantive charge of mail-fraud, in violation of 18 U.S.C. § 1341.[2] The Government alleges that Alsugair violated these criminal statutes by having an imposter take and pass the TOEFL on his behalf. *See* Indict., ¶ 2. The imposter allegedly appeared at a test site and falsely identified himself as the student who had to take the exam. *Id.* ¶ 3. This imposter, posing as the student, had his photo taken at the test site, sat for the TOEFL exam, and directed that the exam results be mailed to a predetermined location in California. *Id.* Once the test results arrived, the real student's photograph was substituted for the imposter's photograph, *id.,* and the fraudulent TOEFL exam results were then mailed to schools requiring the real student's exam results in a phony ETS envelope. *Id.* ¶ 3.

This Court heard oral argument on Alsugair's motion to dismiss the original indictment, which charged Alsugair with depriving ETS of its property interest in "maintaining the integrity of its testing process." *See Alkaabi,* 223 F.Supp.2d at 588. Applying the rule of lenity, I concluded that maintenance of the integrity of

1. ETS also develops and administers the well-known Scholastic Aptitude Test (SAT) given to high school students for college admission purposes. *See Educ. Testing Servs. v. Katzman,* 793 F.2d 533, 535–36 (3d Cir.1986).

2. In the District of New Jersey, there are approximately sixty pending criminal cases charging foreign nationals such as Alsugair with fraud in connection with the TOEFL examination. *See* United States Attorney's Office for the District of New Jersey, News Release, 5/7/02 ("Dozens of Foreign Students Arrested Nationwide in English Language Testing Scam"), available at <http://www.njusao.org/files/to0507_r.htm> (last visited April 7, 2003). The defendants in these TOEFL cases are students taking undergraduate or graduate courses at colleges, universities, and other schools in the United States. *Id.*

a testing process is not a traditionally recognized property right, and I dismissed the indictment. *Id.* at 590–91. The Government subsequently filed a superseding indictment, which is the subject of Alsugair's pending motion to dismiss. The superseding indictment alleges that ETS was deprived of the following property interests:

(i) materials bearing its trademarks, such as the TOEFL exam and score report, (ii) its copyrighted materials, such as the TOEFL exam and its questions, (iii) the ETS-specified test administration and scoring services for the TOEFL exam, and (iv) the value of ETS's goodwill, which is an asset of ETS and is based in part on maintaining the integrity of the testing process.

Indict. ¶ 1(F). On March 28, 2003, I heard oral argument, superbly presented by both Mr. Leone for the Government and Mr. Fishman for the Defendant, on Alsugair's motion to dismiss the superseding indictment. In addition to his motion to dismiss the superseding indictment, Alsugair has moved to strike surplusage from the indictment and to suppress evidence that was seized from his residence pursuant to a search warrant.

## II. ALSUGAIR'S MOTION TO DISMISS THE INDICTMENT

### A. Legal Standard Governing Motions to Dismiss Under Fed.R.Crim.P. 12(b)

 Alsugair once again moves, pursuant to Fed.R.Crim.P. 12(b), to dismiss the indictment brought against him.[3] Fed R.Crim. P. 12 provides, in relevant part, that "[a]ny defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion." *Id.* (West 2003).

"Defenses and objections based on defects in the indictment or information" must be raised prior to trial. Fed.R.Crim.P. 12(b). At this pre-trial stage a "motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis,* 230 F.3d 659, 660–61 (3d Cir. 2000). Alsugair, however, is not challenging the sufficiency of the evidence to be presented against him at trial, but challenges the facial sufficiency of the allegations contained in the indictment brought against him. *Id.* at 661. "[F]or purposes of Rule 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella,* 277 F.3d 678, 685 (3d Cir.2002). Once again, I must determine whether the facts as alleged in the indictment adequately allege the elements of mail-fraud under 18 U.S.C. § 1341.

### B. The "Property" Element of the Mail–Fraud Statute

The mail-fraud statute, 18 U.S.C. § 1341, provides in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or *for obtaining money or property* by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter . . . shall be fined under this title or imprisoned not more than 20 years, or both.

*Id.* (West 2003) (emphasis added).

 "Absent contrary direction from Congress, we begin our interpretation of

---

3. Alsugair's first motion to dismiss was decided along with a motion to dismiss brought by Omar Alkaabi, who was also prosecuted for alleged TOEFL fraud. The two cases were not consolidated for any other purpose.

statutory language with the general presumption that a statutory term has its common-law meaning." *Scheidler v. Nat'l Org. for Women,* 537 U.S. 393, 123 S.Ct. 1057, 1064, 154 L.Ed.2d 991 (2003). The United States Supreme Court has explained that "the original impetus behind the mail-fraud statute was to protect the people from schemes to deprive them of their money or property." *McNally v. United States,* 483 U.S. 350, 356, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Although the statute contains disjunctive language, *McNally* makes clear that 18 U.S.C. § 1341 does not reach *any* "scheme or artifice to defraud," *id.,* but is "limited in scope to the protection of property rights." *McNally,* 483 U.S. at 358–60; *see also Cleveland v. United States,* 531 U.S. 12, 19, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (1909 amendment to Section 1341 signaled no intent by Congress to depart from the common understanding that the words "to defraud" commonly refer to wronging one in his property rights). Consequently, a scheme or artifice to defraud that does not violate any property interest cannot violate the mail-fraud statute.

The parties contest the scope of the property violation that must be alleged in order to satisfy the elements of mail-fraud. Both parties agree that the mail-fraud statute requires the victim of the fraud to be *deprived* of property. It is less clear, however, whether the statute requires the perpetrator of the fraud to have *obtained* that same property from the victim. The Government contends that a defendant may violate Section 1341 even if he does not obtain property from the victim of the fraud, as long as "a scheme or artifice to defraud" exists. Gov't Br. at 38–43. Not surprisingly, Alsugair contends that "that no mail-fraud conviction is possible unless the defendant obtained the property from the victim who is thereby deprived of the property." Def.'s Mem. in Supp. of Mot. to Dismiss., at 7.

The United States Supreme Court recently discussed "obtaining" property in a case brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *Scheidler v. Nat'l Org. for Women,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), in which anti-abortion protestors challenged their convictions for blocking patients' and employees' access to and attempting to shut down abortion clinics, *see Nat'l Org. for Women v. Scheidler,* 510 U.S. 249, 253–54, 114 S.Ct. 798, 801–02, 127 L.Ed.2d 99 (1994). The *Scheidler* defendants were prosecuted under RICO for committing extortion under the Hobbs Act, 18 U.S.C. § 1951 (2003), which defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," *id.,* 18 U.S.C. § 1951(b)(2).

The Supreme Court reversed the defendants' Hobbs Act convictions, holding that they "did not commit extortion because they did not 'obtain' property from respondents as required by the Hobbs Act." *Scheidler,* 537 U.S. at ——, 123 S.Ct. at 1061. In arriving at this conclusion, the Court refrained from tracing the outer boundaries of extortion liability under the Hobbs Act. *Id.* at 1064. The Court took great care to note that it neither endorsed nor rejected the view that "liability might be based on something as intangible as another's right to exercise exclusive control over the use of a party's business assets." *Id.* Indeed, the Court cited a case brought under the mail-fraud statute, *Carpenter v. United States,* 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), for the proposition that confidential business information constitutes "property."

Unlike the extortion language in the Hobbs Act, which clearly requires the obtaining of property from another, *see* 18 U.S.C. § 1951(b)(2), there is room to debate the existence of an "obtaining" requirement in the mail-fraud statute. We are concerned with two phrases defining the basis of criminal liability for abusing the mail system: (1) for "any scheme or artifice to defraud" (the "scheme-or-artifice" clause); or (2) "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" (the "money-or-property" clause). 18 U.S.C. § 1341.[4]

The original mail-fraud statute, enacted in 1872, contained only the "scheme-or-artifice" clause. *See Cleveland,* 531 U.S. at 19, 121 S.Ct. 365. Later, in 1909, the "money-or-property" clause was added to the statute to codify the intervening Supreme Court holding of *Durland v. United States,* 161 U.S. 306, 313, 16 S.Ct. 508, 40 L.Ed. 709 (1896), which held that the mail-fraud statute covered not only representations as to the past or present, but suggestions and promises as to the future as well. *See Cleveland,* 531 U.S. at 19, 121 S.Ct. 365. Thus, the 1909 amendment was not intended to change the meaning of the mail-fraud statute, but to clarify what was already the common-law understanding— that fraud requires the deprivation of money or property. *See id.* There is, likewise, no reason to believe that Congress added the word "obtaining" to the mail-fraud statute superfluously, or to inject a new and separate requirement into the mail-fraud statute that did not exist under the prior language of the statute. This approach is consistent with dicta articulat-

ed by the Third Circuit in *United States v. Thomas,* 315 F.3d 190, 198 (3d Cir.2002), in which the court found that the second section of the mail-fraud statute, the money-or-property phrase, does not set forth an independent basis of liability. It is also consistent with *Scheidler,* which gave effect to the word "obtain" as it was expressly included in the Hobbs Act. *See id.,* 537 U.S. at ——, 123 S.Ct. at 1066; *but see United States v. Coyle,* 943 F.2d 424, 427 (4th Cir.1991) ("any scheme or artifice to defraud" is to be construed broadly).

Moreover, several Circuit Courts have held that the mail-fraud statute requires a defendant to obtain property in addition to deprive the victim of property. *See e.g., Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees, Rest. Employees,* 215 F.3d 923, 926–27 (9th Cir. 2000) ("The purpose of the mail and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings."); *United States v. Walters,* 997 F.2d 1219, 1227 (7th Cir.1993) ("only a scheme to obtain money or other property from the victim by fraud violates § 1341"); *United States v. Baldinger,* 838 F.2d 176, 180 (6th Cir.1988) (Section 1341 "was intended by the Congress only to reach schemes 'that have as their goal the transfer of something of economic value to the defendant.'"). Based on this case law and the history of the amendments to the statute, I find that, in addition to an allegation that a defendant deprived a victim of money or property, the mail-fraud statute, 18 U.S.C. § 1341, requires an allegation that the defendant obtained money or property as well.[5]

---

**4.** A third basis for liability under the mail-fraud statute is using the mail system "to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin,

obligation, security, or other article ..." 18 U.S.C. § 1341 (West 2003).

**5.** Indeed, in some earlier cases the scheme-and-artifice and money-or-property phrases

## C. ETS's Alleged Property Interest in the TOEFL Examination

### 1. The Mail-fraud Statute Applies Only to Traditional Property Rights

 "[T]o determine whether a particular interest is property for purposes of the fraud statutes, we look to whether the law traditionally has recognized and enforced it as a property right." *United States v. Henry*, 29 F.3d 112, 115 (3d Cir.1994). Two of the hallmarks of traditional property are exclusivity, *see Henry*, 29 F.3d at 115; *Carpenter*, 484 U.S. at 26–27, 108 S.Ct. 316; *see also College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) ("The hallmark of a protected property interest is the right to exclude others."), and transferability, *see Boss Co., Inc. v. Bd. of Comm'rs of the City of Atlantic City*, 40 N.J. 379, 385, 192 A.2d 584, 587 (1963) ("qualities of property" include monetary value and transferability).[6] The court should consider whether the right at issue has been treated as a property right in other contexts and whether the right has basic differences from common-law views of property. *Henry*, 29 F.3d at 115 (citing

*United States v. Evans*, 844 F.2d 36, 41 (2d Cir.1988)).

### 2. Intangible Property Rights as the Basis of Mail Fraud

In *Henry*, the United States Court of Appeals for the Third Circuit held that a fair bidding opportunity between competing banks was not a property right encompassed by the mail-fraud statute. *Id.*, 29 F.3d at 116. The indictment in *Henry* alleged corruption by public officials in the process of selecting a bank to be the repository of the Delaware River Joint Toll Bridge Commission's toll bridge revenues.[7] The Government argued that the defendants defrauded the banks of an intangible property right—namely, a fair opportunity to bid to receive the Commission's funds. *Id.* The Third Circuit affirmed the District Court's dismissal of the indictment because a fair bidding opportunity was not a traditionally recognized, enforceable property right. *Id.* at 116. Likewise, in *McNally*, the Supreme Court held that the mail-fraud statute did not reach "the intangible right of the citizenry to good government." *See id.*, 483 U.S. at 356, 107 S.Ct. 2875.[8]

---

collapsed into a single allegation. *See e.g., Bolen v. United States*, 303 F.2d 870, 871 (9th Cir.1962) ("the defendants devised a scheme and artifice to obtain money and property from purchasers of merchandise"); *Marshall v. United States*, 146 F.2d 618, 619 (9th Cir. 1944) ("devising a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses."); *U.S. v. Frontier Asthma Co.*, 69 F.Supp. 994, 998 (W.D.N.Y.1947) ("a scheme and artifice to obtain money and property").

6. In determining whether the law has traditionally recognized a property right, federal courts may look to state courts for guidance. *See, e.g., Cleveland v. United States*, 531 U.S. 12, 23–24, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (analyzing state law to assess alleged

property interest in gaming licenses); *United States v. Antico*, 275 F.3d 245, 262–64 (3d Cir.2001) (analyzing state law to determine scope of public employee's obligations in honest services fraud case).

7. The alleged fraudulent events in *Henry* occurred before Congress extended the mail-fraud statute to include the intangible right of honest services under 18 U.S.C. § 1346.

8. In response to the Supreme Court's decision in *McNally*, Congress passed 18 U.S.C. § 1346 (West 2003), which makes "a scheme or artifice to deprive another of the intangible right of honest services" punishable under the mail-fraud statute. *Id.* The Government has not alleged any violation of § 1346 in the indictment against Alsugair.

*McNally,* however, did not broadly limit the scope of § 1341 to tangible as distinguished from intangible property rights. In fact, in the same year it decided *McNally,* the Supreme Court applied 18 U.S.C. § 1341 to intangible property rights in *Carpenter v. United States,* 484 U.S. 19, 25, 28, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In *Carpenter,* the Court held that confidential business information, which the defendant had compiled for a *Wall Street Journal* investment column, was within the ambit of the mail and wire fraud statutes.[9] *Id.* The *Carpenter* Court explained that "[c]onfidential business information has long been recognized as property." *Id.* at 26 (citations omitted).

### 3. Property Interests Advanced by the Government

Somewhere between the fair bidding opportunity in *Henry* and the confidential business information in *Carpenter* lies ETS's intangible property interest in the TOEFL exam. The Government has advanced four property interests as the basis of its mail fraud allegation: (i) copyright; (ii) trademark; (iii) administration and testing services; and (iv) goodwill. *See* Indict. ¶ 1(F). This Court must decide whether the four property interests set forth in the superseding indictment satisfy the requirements of the mail-fraud statute—specifically: (1) whether they are traditional property rights; (2) whether the victim, ETS, was deprived of property; and (3) whether the defendant, Alsugair, obtained property from ETS.

### i. Administration and Scoring Services; Copyright.

 Two of the property interests alleged in the superseding indictment are

untenable as a matter of law. First is "the ETS-specified test administration and scoring services for the TOEFL exam." Quite simply, there is no authority to support the proposition that services are a traditional property interest. Generally, services are not a traditional property interest, as the Ninth Circuit explained in *United States v. Corona–Sanchez,* 291 F.3d 1201 (9th Cir.2002) (en banc):

> It may be that many states have now enacted separate theft-of-services provisions, but that fact does not mean that most states consider labor or services to be "property." In fact, it suggests the contrary is true: if labor were property, there would be no need for separate provisions criminalizing the theft of labor or services.

*Id.* at 1208 (citing *McNally v. United States,* 483 U.S. 350, 356, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)). Because test administration and scoring services are not considered traditional property interests, I shall dismiss this allegation of the superseding indictment pursuant to Fed. R.Crim.P. 12(b)(2).

 The Government's copyright allegation, likewise, fails because nothing alleged in the superseding indictment suggests that Alsugair actually infringed ETS's copyright. The superseding indictment merely alleges that Alsugair "obtained access to ... copyrighted materials." Indict. ¶ 6. There is no allegation that Alsugair retained a copy of the exam, made up his own competing test questions based on the TOEFL exam, or "broadcasted" his experience on the TOEFL to anyone else. *Cf. Educ. Testing Servs. v. Katzman,* 793 F.2d 533 (3d Cir.1986) (copyright infringement claim brought by ETS

---

9. The mail and wire fraud statutes share the same relevant language, and the same legal analysis applies to both statutes. *See Carpen-* *ter v. United States,* 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

against test preparation organization that allegedly copied exam questions). Indeed, according to the superseding indictment, Alsugair did not even take the exam himself, and could only have reaped the benefits of the alleged fraudulent act by keeping his actions secret. Finally, there is no allegation that Alsugair infringed any copyright that may have existed in the ETS score sheet—Paragraph 3 of the indictment alleges that Alsugair's photograph was substituted on the score sheet for the imposter's photograph, previously taken at the test site. The score sheet was, otherwise, unaltered. Assuming that copyright infringement can be the basis for mail fraud,[10] the superseding indictment does not even allege copyright infringement.

■■■■■■ "The rule of lenity, which requires that ambiguities in criminal statutes be resolved against the government, 'serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not the courts, define criminal liability.'" *Panarella*, 277 F.3d at 697–98 (quoting *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). Moreover, "[t]here are no constructive offenses; and

before one can be punished, it must be shown that his case is plainly within the statute." *McNally*, 483 U.S. at 360, 107 S.Ct. 2875 (citation omitted). The rule of lenity requires these two untenable property interests to be dismissed from the superseding indictment. Thus, in addition to ETS's alleged property interest in its administration and scoring services, I shall dismiss ETS's alleged copyright interest pursuant to Fed.R.Crim.P. 12(b).

### ii. Trademark; Value of Goodwill

■■■■ In granting Alsugair's first motion to dismiss the original indictment, I explained that "[t]his Court recognizes the importance that ETS places on maintenance of the integrity of its TOEFL testing process. Reliable and accurate test results are certainly valuable to ETS." *Alkaabi*, 223 F.Supp.2d at 590. The superseding indictment, however, no longer relies on ETS's ethereal integrity interest in the TOEFL exam. The remaining two alleged property interests, ETS's trademark and the value of its goodwill, withstand Alsugair's motion to dismiss the superseding indictment because ETS was deprived of these traditional property in-

---

**10.** In *Dowling v. United States*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985), the United States Supreme Court explained that "a copyright, like other intellectual property, comprises a series of carefully defined and carefully delimited interests to which the law affords correspondingly exact protections." *Id.* at 216, 105 S.Ct. 3127. "[I]nterference with copyright does not easily equate with theft, conversion or fraud." *Id.* at 217, 105 S.Ct. 3127. Thus, the Court held that for purposes of the National Stolen Property Act, 28 U.S.C. § 2314, which requires property to be "stolen, converted or taken by fraud," the interstate transport of phonorecords containing copyrighted musical compositions for which no authorization had been sought or royalties paid did not violate the statute. *Id.* at 215–16, 105 S.Ct. 3127.

Based on *Dowling*, at least one court, *United States v. LaMacchia*, 871 F.Supp. 535, 545 (D.Mass.1994), has held that the Government cannot criminally prosecute a defendant for copyright infringement by using the wire fraud statute, the mail-fraud statute's close cousin. Otherwise, the Government could punish a defendant for a copyright violation under the mail-fraud statute when the violation would not constitute criminal conduct under the Copyright Act. *Id.* at 542–43; *see also United States v. Rothberg*, 222 F.Supp.2d 1009, 1018 (N.D.Ill.2002) (explaining how Congress amended the Copyright Act, 17 U.S.C. § 506(a) in response to the *LaMacchia* decision).

terests, and Alsugair obtained the benefit of them as well.[11]

According to the superseding indictment, Alsugair did not take the TOEFL exam. Indict. ¶ 3. Instead, an imposter took the exam in Alsugair's name. *Id.* This imposter signed the confidentiality statement, had his photo taken at the test site, took the exam, and directed that the exam results be mailed to a location in California. *Id.* Once the exam results arrived, Alsugair's photograph was substituted for the imposter's, and the fraudulent TOEFL exam results were sent to schools in phony ETS envelopes. *Id.*

Neither party contends that a trademark or a business's goodwill is not a traditional property right. Alsugair, however, argues that he cannot be charged with mail fraud based on ETS's loss of goodwill "because goodwill cannot be transferred separately from the business with which it is associated." Def.'s Reply Mem. of Law in Further Supp. of Mot. to Dismiss, at 26. This, however, requires a holistic conceptualization of goodwill, and the mail-fraud statute requires no such thing. A business may be "deprived" of its goodwill whether the goodwill is transferred in its entirety, or made less valuable in part. To conclude otherwise would permit a defendant to cripple a business for an extended period of time without fear of retribution, unless and until the business collapsed and a "total" loss resulted. Likewise, ETS's trademark need not be expropriated in whole in order to have its value significantly diminished. Indeed, the two go hand-in-hand: "[A] man's right to the continued enjoyment of his trade reputation and the good will that flows from it, free from unwarranted interference by others, is a property right, for the protection of which a trademark is an instrumentality." *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713 (1916).

I find that the superseding indictment adequately alleges that ETS was deprived of its goodwill when Alsugair and his alleged conspirators sent the "doctored" TOEFL score sheets, purportedly issued by ETS, through the mails in phony envelopes bearing the ETS mark to universities. Although Alsugair did not completely deprive ETS of its goodwill or trademark, he significantly diminished the value of both, as they are intertwined. For a business engaged in administering exams and reporting exam results to paying customers, the accuracy of ETS's reports is paramount to its operations and success. Alsugair allegedly impaired ETS's core functions. Comcomitant with the deprivation of ETS's goodwill, Alsugair also obtained ETS's imprimatur of English proficiency on the TOEFL exam through the alleged fraudulent acts. Because ETS has been deprived of a traditional property interest and Alsugair has obtained that interest, the rule of lenity is no bar to the progress of this criminal prosecution. As a matter of statutory interpretation, I conclude that, under Fed.R.Crim.P. 12(b)(2), the trademark and goodwill property interests al-

---

**11.** I note that a business's trademark is tied to its goodwill. The Lanham Act "provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation. *See id.* By applying a trademark to goods produced by one other than the trademark's owner, the infringer deprives the owner of the goodwill which he spent energy, time, and money to obtain. *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 854 n. 14, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982).

leged in the superseding indictment do not exceed the scope of the mail-fraud statute. Therefore, Alsugair's motion to dismiss the superseding indictment shall be denied with respect to these allegations.

## III. MOTION TO STRIKE SURPLUS-AGE FROM THE INDICTMENT

 On motion of the defendant, the Court may strike surplusage from the indictment. Fed.R.Crim.P. 7(d). The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment. *See United States v. Yeaman*, 987 F.Supp. 373, 376 (E.D.Pa.1997); *United States v. Gatto*, 746 F.Supp. 432, 455 (D.N.J.1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir.1991). Under the exacting standard by which they are evaluated, motions to strike surplusage are rarely granted. *See United States v. Giampa*, 904 F.Supp. 235, 271 (D.N.J.1995). "A motion to strike surplusage from an indictment is addressed to the sound discretion of the District Court and should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory or prejudicial matter." *United States v. Vastola*, 670 F.Supp. 1244, 1254 (D.N.J.1987) (quoting *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)), *rev'd in part on other grounds by* 899 F.2d 211 (1990), *vacated by* 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990).

Alsugair moves to strike language from Paragraphs Two through Five of the superseding indictment that suggests he was part of a larger scheme, with more conspirators and victims than the indictment explicitly charges. He specifically objects to the following language: "Beginning in or about 1999, Mahmoud Firas ... Begad Abdel–Megeed ... *and others*

participated in a scheme ...," Indict. ¶ 2 (emphasis added); "Tarik I. Alsugair *and others* knowingly and willfully combined, conspired, confederated and agreed ...," Indict. ¶ 4 (emphasis added); and "The principal object of the conspiracy was to defraud ETS into reporting that the defendant TARIK I. ALSUGAIR *and others* had taken the TOEFL exam ...," Indict. ¶ 5 (emphasis added).

The Government argues that the language is not prejudicial because Alsugair availed himself of the services of an established criminal enterprise, and that the superseding indictment describes that enterprise by "laying out in detail the fraudulent test-taking business being run by Mahmoud Firas with the assistance of Begad Abdel–Megeed and others." Gov't's Br. in Oppos. to Mot. to Dismiss, at 66.

 This is one of those rare cases, *see Giampa*, 904 F.Supp. at 271, in which the defendant's motion to strike surplusage should be granted. The superseding indictment makes specific reference to two individuals, Firas and Abdel–Megeed, who were part of the alleged conspiracy to defraud ETS. The indictment's multiple references to "others," however, implies that there are additional individuals who were involved in the scheme, which could prejudice the defendant by leading the jury to believe that there exists a broader scope of illegal activity than is actually charged in the indictment. This vagueness of language could certainly prejudice Alsugair. Judge Brotman, my distinguished colleague on the United States District Court for the District of New Jersey, confronted this very same issue twice, in *Gatto*, 746 F.Supp. at 457–58, and *Vastola*, 670 F.Supp. at 1256–57, and he came to the same conclusion. Judge Brotman explained that he could have reserved decision on the motion to strike surplusage until the close of evidence at trial, but that

this would have permitted the jury to hear the terms of the indictment during the court's recitation of the indictment at the opening of the case, thus making any *post hoc* removal of prejudicial language ineffective. *See Gatto,* 746 F.Supp. at 458.

The Government is entitled to present evidence about the alleged TOEFL scheme at trial, as alleged in the superseding indictment. The specific words "and others," however, suggest that Alsugair was part of a broader conspiracy than the one alleged in the superseding indictment. Thus, Alsugair's motion to strike surplusage shall be granted in part and denied in part. I shall order that the words "and others" be stricken from the superseding indictment, but I shall deny Alsugair's motion to strike Paragraphs Two through Five in their entirety.

## IV. MOTION TO SUPPRESS EVIDENCE

Lastly, Alsugair moves to suppress evidence seized from his apartment in Springfield, Missouri. He argues that the affidavit presented to the Magistrate Judge in support of the search warrant lacked sufficient indicia of reliability to support the Magistrate Judge's finding of probable cause.

 The Fourth Amendment of the Constitution of the United States sets forth:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The exclusionary rule, a rule intended to deter unlawful police conduct, requires the suppression of evidence seized as a result of an unconstitutional search and seizure. *See United States v. Zimmerman,* 277 F.3d 426, 436 (3d Cir.2002) (citing *United States v. Leon,* 468 U.S. 897, 919, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Even if a warrant is found to be defective for lack of probable cause, however, evidence need not be suppressed under the good-faith exception to the exclusionary rule, under which the suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge,* 246 F.3d 301, 307 (3d Cir.2001). The Third Circuit has identified four situations in which an officer's reliance on the authority of a search warrant would not be objectively reasonable:

1. Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;

2. Where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function;

3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Zimmerman,* 277 F.3d at 436–37. Alsugair challenges the adequacy of the search warrant on the third and fourth grounds.

 The search warrant for Alsugair's apartment is supported by the affidavit of Special Agent Stephen Christopher Holland. *See* Decl. of Paul J. Fishman, Ex. B. Alsugair characterizes Holland's affidavit as one filled with unsupported, conclusory assertions. After reviewing the affidavit, I

find that it is not "so lacking in indicia of probable cause" as to make an officer's belief in it unreasonable. The eighteen-page affidavit recounts the background of the alleged TOEFL scheme and states that "Alsugair participated in the Fraudulent TOEFL Scheme by having Abdel–Megeed take the TOEFL exam for him on or about December 18, 2000." Holland Aff. ¶ 11. Consistent with this alleged plan, the affidavit describes a package sent to Abdel–Megeed as containing "TOEFL exam results for three individuals in phony ETS envelopes purporting to bear the registered trademark of TOEFL," as well as a fraudulent resident alien card and fraudulent driver's license. *Id.* ¶ 18. In short, the affidavit is detailed. I find that the affidavit submitted in support of the search warrant is not so wanting as to defeat the good-faith exception to the exclusionary rule.

 Likewise, Alsugair's facial challenge to the warrant for the failure to particularize the place to be searched or the things to be seized also fails. Alsugair claims that paragraph (3) to Attachment B of the warrant is unconstitutionally broad. This paragraph seeks:

> Any and all documents evidencing contact with Mahmoud Firas, Begad Abdel–Megeed *or other coconspirators,* including personal telephone books, appointment books, electronic organizers, correspondence, business cards, and papers noting: (a) the name of Mahmoud Firas . . . (c) the name of Begad Abdel–Megeed . . .

*Id.* (emphasis added). The use of "other coconspirators" in this section is limited to evidence implicating contact with individuals involved in the fraudulent TOEFL scheme, and is not unconstitutionally broad.

 In summary, even if I were to find that Holland's affidavit failed to demonstrate probable cause for the issuance of the search warrant, an issue which I need not address at this time, the good-faith exception to the exclusionary rule would apply, and the evidence seized from Alsugair's residence would, nonetheless, be admissible. Therefore, I shall deny Alsugair's motion to suppress the evidence seized from his residence.

## V. CONCLUSION

For the reasons set forth above, Alsugair's motion to dismiss the superseding indictment under Fed.R.Crim.P. 12(b) shall be granted in part and denied in part. The motion to dismiss the allegations of the superseding indictment relating to the deprivation of ETS's property interest in its copyright and its administration and scoring services shall be granted. The motion to dismiss the allegations of the superseding indictment regarding ETS's property interest in its trademark and goodwill shall be denied. Alsugair's motion to strike surplusage shall also be granted in part and denied in part. The potentially prejudicial words "and others" shall be stricken from the superseding indictment. The motion to strike Paragraphs Two through Five shall be denied. Lastly, Alsugair's motion to suppress evidence based on the insufficiency of the search warrant shall be denied. The Court shall enter an appropriate form of Order memorializing its rulings.

## ORDER

This matter having come before the Court on the motion of Defendant, Tarik I. Alsugair, to Dismiss the Indictment, pursuant to Fed.R.Crim.P. 12(b), Paul J. Fishman, Esq., Karin McEwen, Esq., Ellen A. Harnick, Esq., and Lee D. Sossen, Esq., FRIEDMAN KAPLAN SEILER & ADELMAN LLP, appearing on behalf of Defendant, Tarik I. Alsugair; and Christo-

pher J. Christie, Esq., United States Attorney, George Leone, Esq., Assistant United States Attorney, and Amy S. Winkelman, Esq., Assistant United States Attorney, appearing on behalf of the United States of America; and,

The Court having considered the submissions of the parties, as well as the oral arguments of counsel, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 8th day of April, 2003, hereby ORDERED that:

(1) Alsugair's Motion to Dismiss the Superseding Indictment is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to the allegations of the superseding indictment relating to the deprivation of ETS's property interest in its copyright and its administration and scoring services. The motion is DENIED with respect to the allegations of the superseding indictment relating to ETS's property interest in its trademark and goodwill;

(2) Alsugair's Motion to Strike Surplusage is GRANTED IN PART and DENIED IN PART. The motion to strike the words "and others" from Paragraphs Two, Four and Five of the superseding indictment is GRANTED. The motion to strike Paragraphs Two through Five from the superseding indictment is DENIED; and,

(3) Alsugair's Motion to Suppress Evidence is DENIED.